-CHIEF JUSTICE PRYOR
delivered the opinion oe' the court.
In the month of April, 1875, John Engeln, by proper proceeding under the statute, was adjudged a lunatic, and Jacob Dolfinger was appointed his committee. A petition was filed under article 2, chapter 53 of the General Statutes, asking a sale of so much of the real estate belonging to the lunatic as might be necessary to pay his debts and maintain his family. During the progress of the action, and at the instance of the wife and children of the lunatic it was adjudged by the chancellor that the claims of the lunatic and his family, for a support and maintenance, were paramount to the claims of creditors, and this is the only question necessary to be noticed in the case. The practice of the English chancellors is relied on in support of the judgment below, and interesting briefs have been filed by counsel on each side as to the character of the jurisdiction asserted by the chancellor when denying the 'claims of creditors; the one maintaining that the administration of the estates of lunatics was a matter of rdyal prerogative, and the chancellor’s action alone ministerial; while the other asserts this jurisdiction was exercised by the chancellor as equity judge, and not as minister of the crown. It is not necessary to determine this issue made by counsel, as we are satisfied, from whatever source, this jurisdiction was derived, it can not be exercised by the courts of this country. In this state, while the courts of chancery have control over the lunatic and his estate, the creditor is entitled to have the estate sold for the purpose of satisfying his debt. The 25th section of article 2, chapter 53, General Statutes expressly provides that, “ If the estate of a lunatic, or person .adjudged to be incapable of managing his estate, be not sufficient to pay his debts, the same may, by a circuit or chancery court, be ordered to be sold, and proceeds distributed and estate settled as prescribed by law for the settlement of the estate of insolvent decedents.”
*711 Here is a plain statute, regulating and directing the action of the chancellor in such cases; and when he comes to distribute the fund, unless liens have been created upon the estate, each creditor gets his pro rata portion of the estate or its proceeds, less the sum to which the lunatic or his family may be entitled by reason of the exemption laws of the state. The mental condition of the debtor gives him no rights or privileges over other debtors, and the discrimination, if any is made, is in favor of the creditor, the statute requiring that his debt shall be paid, or an equitable distribution of the proceeds of his estate between his creditors.
It is insistéd, however, that the statute referred to can not operate to repeal the common law, and that it must have been enacted with a view to the law as it then existed.
Recognizing the origin of the English rule on the subject, as maintained by counsel for the appellees, still the statute directing the mode of applying the assets of the lunatic, when considered in connection with the exemption laws of the state, leaves no discretion with the chancellor except to see by his judgment that the claims of creditors are just, and to make such a disposition of the estate as will satisfy their demands within a reasonable tipae.
The creditor, when he loaned his money or parted with his property, knew what estate of the debtor was by the law of the state exempt from the payment of his debts, and when he comes to ask the chancellor to make payment, it is insisted that the debtor is not only entitled to the property exempt by the statute from sale under a judgment, but that he is absolutely entitled, in preference to the creditor, to the possession of his estate, that the income may be applied to his support and that of his family.
In this case there is an income of $1,100 per annum after the payment of taxes, every dollar of which is applied to the use of the lunatic and his family, consisting of his wife and *712 three children, and the relief which is sought by the creditor is denied.
In this state we have institutions for the abode and comfort of lunatics: This unfortunate class is maintained by taxing the creditor and the debtor under just and humane legislative enactments, and after taxing the creditor for this benevolent purpose the chancellor is asked to go further and suspend all the remedies he has for the collection of his debt against the estate of the lunatic, and to finally withhold all payment if the property owned by the lunatic is insufficient for his support and that of his family. The creditor and his family may have been wrecked in fortune, or with such human afflictions, other than lunacy, as preclude them from making a support, yet it is urged, notwithstanding the humane means devised by law for the protection and support of the lunatic, that his creditor must still further contribute, even to the loss of his entire debt.
If the law-making power intended to make such an exemption in favor of lunatics, it would have been found in the statute, and when basing such an exemption on the ground of public policy we see no reason why it should not extend to every form of human affliction where the unfortunates are unable to comply with the demands of creditors.
The owner of property must pay his debts, and can only retain such of his estate as is exempt by statute for the maintenance of the debtor and his family.
Judgment below is reversed, and cause remanded for further proceedings consistent with this opinion.