Central Kentucky Asylum For Insane v. Drane, &c.

CASE 40—ACTION BY CENTRAL KENTUCKY ASYLUM TO SUBJECT THE
INTEREST OF EDGAR DRANE AND OTHERS IN CERTAIN REAL ESTATE
TO THE PAYMENT OF HIS BOARD.—MAY 8.

|113 281|
|114 837|

# Central Kentucky Asylum for the Insane v. Drane, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.   AFFIRMED.

INSANE PERSONS—CONFINEMENT IN ASYLUMS—PAUPER LUNATIC—
CONCLUSIVENESS OF FINDING—LIABILITY. FOR BOARD IN ASYLUM—
EXEMPTIONS FOR HIS FAMILY.

Held:  1. The finding of a jury that a lunatic is a pauper, so as
to entitle him to be admitted to a State asylum without payment
in advance, as provided by Kentucky Statutes, section 256, is not
such an adjudication between the lunatic and the State as to
preclude further inquiry as to the ability of the lunatic to pay;
express provision being made by Id. section 257, for the recov-
ery of the patient's board where he has, or subsequently ac-
quires. estate.

2. Kentucky Statutes, section 257, authorizing a, suit to subject the
estate of a lunatic who has been committed as a pauper in the
event that he has or shall acquire "estate which can be sub-
jected to debt," is to be read in connection with Id., section 256,.
which provides that the lunatic shall, if married, be admitted
as a pauper if he is unable to pay the board "besides providing
for others naturally dependent;" and therefore, where the in-
come of the estate acquired was not more than sufficient to sup-
port the patient's wife and child, he had no estate which could
be subjected to debt, within the meaning of the statute.

HOLT & ALEXANDER, ATTORNEYS FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. The recitation in the inquest, that the lunatic "owns no
estate of any kind" is not a judgment which precludes an in-
quiry or constitutes a plea in bar. The finding is a mere di-
rection to the superintendent, as to who he is to receive as a
pauper patient, and has no bearing upon or connection with
section 257, which is the remedial statute.

2. The court will not pass upon the constitutionality of a statute, unless a decision upon that very point becomes necessary to the determination of the cause, and under the petition and the amendment thereto a recovery can be had, if not under the statutes, then, upon a *quantum meruit.*  ,

3. The mere fact that the statute applies to a particular class of persons, to the exclusion of all other classes does not render it unconstitutional, provided all persons are treated alike under similar circumstances and conditions.

4. The statute is remedial in character. There is no encroachment of the legislative upon the judicial branch of the government. It is true the Legislature fixes the amount to be charged, but the court tries all issues and determines the case, and the charge of $200 per year is not unreasonable.

5. The confinement of a violent lunatic is as defensible as the punishment of a criminal, and the State in its sovereign capacity would be justified in confiscating the entire estate of a lunatic supported in a State institution. The charge of $200 per year is the exercise of the police power of the sovereign. The statute is remedial and compensatory, rather than arbitrary and oppressive.

6. Under section 30, article II., chapter 48 of the Acts of 1894, no personal judgment can be had against a lunatic. The remedy is an action in rem to subject his estate. The case must therefore be referred to the commissioner to ascertain the value and nature of his estate, the extent of his indebtedness, and what property is necessary to be sold to satisfy the debts of the estate. The same as in the case of a decedent.

7. The provisiions of section 257 of the Kentucky Statutes are: "When a patient has or shall acquire property subject to debt (not if he has property which yields an income more than sufficient to support those naturally dependent), such property can be subjected for the payment of his board."

The statute neither expressly nor by implication provides that the lunatic himself must have property sufficient for the support of his family, and that the excess can only be subjected. The statute, however, does provide that a father shall not be compelled to pay for the board of his insane child or the husband for the board of his insane wife if unable to provide for others naturally dependent. In other words, the statutory provision is, the lunatic must pay if he has property subject to debt, the parent or husband must pay for his child or wife, if he has an income over a sufficiency to provide for others naturally dependent.

8. The wife having a separate income of her own of twenty-

five dollars per month, is not dependent upon her husband's estate for support. The question of support is not the issue. She is merely entitled to the exemptions .given her by the law. Englins Committee v. Bank, 14 Bush, 708; Coleman v. Asylum, 6 B. Mon., 239; Cooley's Con. Lim., pages 139, 193; 5 Bush, 687. Tiedeman Lim. of Police Power, pp. 105, 110; Gossom v.Mc-Ferran, 79 Ky., 237; Smith v. Cochran, 7 Bush, 555; Templeton v. Stratton, 128 Mass., 137; Kentucky Statutes, 257; 2561, 2150; Civil Code, sec. 430; Asylum v. Penick Committee, 19 R., 1584; Southland Stat. Const., sec. 399; 169 U. S., 248.

W. P. HILLSMAN AND PIRTLE & TRABUE, FOR APPELLEES

### POINTS AND AUTHORITIES.

1. This case is controlled by section 256 of Kentucky Statutes, which provides that if an insane person *be married and be unable to pay his board besides providing for others naturally. dependent upon him,* he shall be held to be a pauper.

2. Such patients as come within the definition stated are expressly excepted by section 255 of the Kentucky Statutes from the paying of board.

3. Where an insane person has a wife and child to support and has prior to his marriage or inquest so conveyed his estate that the total *net income* per year from same is $280.32 or $23.36 per· month. allowing nothing for loss of rents or vacant property, he is a *pauper* within the meaning of the statute as the payment of his board would reduce the income of his wife and child to an insignificant sum. Especially is this true where the wife has *others dependent upon her* and is on account of feeble health *unable to earn a living* for herself as admitted by the pleadings.

4. There are no facts alleged in the pleadings to show that this case should be referred to the commissioner. The estate is not shown to be insolvent or to owe any debts. The motion to refer to the commissioner was made *before* issues of the case were made. This question, however, can not be considered because the motion *is not in the record.* .

5. The question as to whether or not patient's estate is liable for board is not a question of *exemption* nor does it come within the .exercise of the *police power* of the State. The exemption of this class of patients from payment of board is the exercise of the *State's charity* toward its unfortunates and is a matter of legislative discretion as expressed by the statutes relating to *charitable institutions.*

6. Section, 256 of the Kentucky Statutes provides that the court holding the inquest as to lunacy shall require the jury to

return a finding on the subject as to whether the patients is a pauper within the meaning of the statute or to use the language of the statute applying to this case *"if married be unable to pay such board besides providing for others naturally dependent."* The jury returned a finding that appellee *"owned no estate of any kind"* after hearing evidence showing his property and estate to be as shown in this case. He had the same estate *then* as *now*. The verdict of the jury is binding, not only on the superintendent as to receiving the patient, but also conclusive as to the question of board. The board of commissioners can not ignore or change the *definition of a pauper patient.* Both the *facts* of this case and the *verdict* of the jury at the inquest show appellee, Drane, to be a pauper within the meaning of the statute. The court will hold him to be a pauper upon the *facts* even if the *verdict* had not shown him to be such.

7. Section 263 of Kentucky Statutes fixes the sum of $150 per annum as the allowance to each patient in the asylum. The extra fifty dollars sued for herein is either an arbitrary exaction or tax on a particular class of litigants or a penalty or excessive attorney's fee charged against an unsuccessful litigant and is illegal and contrary to the statute against usury.

8. Two hundred dollars of the claim sued on accrued more than five years before the filing of this suit and is barred by the Statute of Limitation.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

In March, 1895, an inquest was held in the Jefferson circuit court, and Edgar Drane was found to be a lunatic, and a judgment rendered committing him as a pauper lunatic to the Central Kentucky Asylum for the Insane. In November, 1900, an action was instituted under section 257 of the Kentucky Statutes, seeking to subject his estate to the payment of his board at the rate of $200 per annum. The finding of the jury at the inquest was "that he owns no estate of any kind," but at that date he owned, and still owns, undivided interests in various pieces of real property, his interest wherein would be worth upwards of $10,000 if unincumbered, and his interest in the rents of which amounts to $780 per annum, but subject to a life estate in the in-

come in favor of his mother, which reduces the net income
of the lunatic to about $300 per annum. The lunatic has a
wife and child about seven years old, and the wife owns
property of her own, from which she derives an income of
about $25 per month. Upon final hearing the petition was
dismissed upon the ground that appellee's estate did not
produce an inocme more than sufficient for the support of
his wife and child. It is contended that this was error, be-
cause the question of the sufficiency of the lunatic's estate
to support his family was not the issue, but whether he had
property subject to debt.

We have held in the case of Schroer v. Kentucky Asylum
(this day decided), 113 Ky., 288; 24 R., 150;
68 S. W., 150, that the jury's finding that
the lunatic owns no estate of any kind does not preclude
further inquiry, as the section providing for such finding is
to be read in connection with section 257, providing for
such a suit as this. A number of other questions presented
by this record are considered and decided in that case, and
need not be referred to here. The only question necessary
to be decided here is the proper construction of the language
used in section 257, authorizing a suit to subject the estate
of the lunatic who has been committed as a pauper in the
event that he has or shall acquire "estate which can be sub-
jected to debt." On behalf of the asylum it is claimed that
section 256 is not to be considered in construing section 257,
and that it is merely a direction that the superintendent of
the asylum shall receive as a pauper each patient that the
verdict given at the inquest shows to be a pauper. The
statute (section 256) provides: "An insane person shall be
held to be a pauper if unable to pay six months' board in
advance, or, if married, be unable to pay said board besides
providing for others naturally dependent; or, if a minor, the
parents of said person are unable to pay board besides sup-

porting others naturally dependent on them. The court holding the inquest shall require the jury to return a finding on this subject, and the verdict shall be binding upon the superintendent." This section, it is insisted, was not intended as a definition of who were paupers, or to limit or enlarge the exemption laws when applied to pauper lunatics where a recovery is sought for their board under section 257. The case of German National Bank v. Engeln's Committee, 14 Bush, 708, is relied on in support of this contention. The statute there construed provided that, if the estate of a lunatic was not sufficient to pay his debts, "the same not subject to exemption may, by a circuit or chancery court, be ordered to be sold and proceeds distributed and estate settled, as prescribed by law for the settlement of the estates of insolvent decedents." It was sought in that case to hold the claims of the lunatic and his family for support and maintenance to be paramount to the claims of creditors, the practice of the English chancellors, being relied upon in support of the contention. It was held that the statute was a plain one, explicitly directing the mode of applying the assets of the lunatic, and left no discretion with the chancellor. We do not think that case at all analogous to the case at bar. The two sections (256 and 257), are in *pari materia.* They are parts of the same statute, in reference to the same subject, and are to be read together. If the lunatic is married, and unable to pay board besides providing for others naturally dependent, he "shall be held to be a pauper;" that is to say, that, though the condition of his estate is known, and known to be in condition to pay his board without supporting his family, he shall nevertheless be admitted to the asylum as a pauper. But it is contended that, though his estate is exempted for the purpose of securing his admission, notwithstanding the fact that its suffi-

ciency to support him is known, it can, immediately after his admission, be subjected to the payment of his board, together with the costs of the necessary litigation. Such a construction seems to us to be unwarranted. If the lunatic is to be held a pauper so as to be admitted, he is to be held a pauper so as to remain. The evident policy of the law is to provide at public expense for such lunatics as are unable to pay for their own keeping, and who have no relatives who are able and bound to support them. In the bestowal of its bounty the Commonwealth may properly discriminate between a lunatic who has a wife and family dependent upon him for support and one who has no such claims upon his estate. A similar distinction is recognized between sane persons similarly situated. Reading the two sections together, we think that section 257, in providing for a case where the patient has or shall acquire estate which can be subjected to debt, must be read with section 256, which provides that he shall be regarded as a pauper if he is unable to pay the board besides providing for others naturally dependent, and therefore means that in such case he has no estate which can be subjected to debt.

Counsel for appellant insists that the case should have been referred to the commissioner, to ascertain the nature and value of the estate of the lunatic, the extent of his indebtedness, and what property is necessary to be sold to satisfy his debts, as in the case of a decedent, under section 2150, Kentucky Statutes. The motion to refer to the commissioner, which was overruled by the trial court, is not a part of the record, and we are not informed as to the ground upon which such reference was sought. There seems to be no allegation of any debts existing against the lunatic's estate, or that the estate is insolvent. The sole question before the court, as we have seen, was the con-

struction of sections 256 and 257.   We do not mean to de-
cide that relief may not be had by the asylum authorities
in the event of a change in the condition of the estate by
the termination of the life estate of the lunatic's mother or
otherwise.   But upon the facts presented in this record we
are of opinion the trial court did not err in adjudging the
net income of the lunatic's estate, in connection with the
income from the wife's estate, to be not more than adequate
for the support of the lunatic's wife and child.

The judgment is therefore affirmed.

Petition for rehearing by appellant overruled; whole court
sitting.