CASE 41—ACTION BY CENTRAL KENTUCKY ASYLUM TO SUBJECT THE INTEREST OF CERTAIN REAL ESTATE OF DEFENDANT SCHROER TO THE PAYMENT OF HIS BOARD.—MAY 8.

# Schroer v. Central Kentucky Asylum for the Insane.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

INSANE PERSONS—CONFINEMENT IN ASYLUMS—PAUPER LUNATIC—CONCLUSIVENESS OF FINDING—CLASSIFICATION OF PATIENTS—AMOUNT OF BOARD—ARBITRARY DISCRIMINATION—SPECIAL LEGISLATION—STATUTE OF LIMITATIONS.

Held:  1. The finding of a jury that a lunatic is a pauper, so as, to entitle him to be admitted to a State asylum without payment in advance, as provided by Kentucky Statutes, section 256, is not such an adjudication between the lunatic and the State as to preclude further inquiry as to the ability of the lunatic to pay; express provision being made by Id., section 257,

Schroer v. Central Kentucky Asylum for the Insane.

for the recovery of the patient's board where he has, or subsequently acquires, estate.

2. The legislature has no power to fix one rate for pay patients who are admitted into a State asylum as such, and to fix another rate, one-third greater, for patients who are admitted as paupers, but subsequently become able to pay, though the latter pay only at the end of a suit, the discrimination being an arbitrary one, without any proper or reasonable relation to the object sought to be accomplished; and therefore Kentucky Statute, section 257, to the extent that it provides for such increase of rate as to patients who acquire estate after being admitted as paupers, is void as fixing an arbitrary penalty, and as violating Const., section 59, subsec, 6, which forbids special legislation to affect the estate of persons under disabilities.

3. Kentucky Statutes, section 2515, providing that an action upon a liability created by statute when no other time is fixed by the statute creating the liability shall be commenced within five years next after the cause of action accrued, applies to an action by asylum commissioners, under Id., section 257, to subject the estate of a patient who has been admitted as a pauper, but has subsequently acquired estate which may be subjected.

4. As that statute authorizes the commissioners to sue "when reliably informed of the fact" that a pauper patient has acquired estate which may be subjected, a mistake of the commissioners as to the title to property inherited by a patient from his mother did not prevent the statute of limitations from running, as the commissioners must be deemed to have been reliably informed of the lunatic's title to the property from the time when the title was of record.

5. As the proceeding under that statute is a proceeding *in rem* to subject the estate of the lunatic, and not the individual items which go to make up that estate, the cause of action accrues whenever the patient acquires any estate which may be subjected under the statute, and is barred after the lapse of five years from that time, though the particular estate sought to be subjected may have been acquired within five years.

6. It is proper, in cases where it may be done without undue delay, to provide for the payment of such claims out of the income of the estate.

GEORGE L. EVERBACH & A. L. DEMBITZ, FOR APPELLANT.

HOLT & ALEXANDER AND A. J. CARROLL, FOR APPELLEE.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

In March, 1889, Joseph Schroer was committed to the Central Kentucky Asylum as a pauper patient, and has remained there since that date without any payment being made for his board and care. In January, 1890, his mother died intestate, leaving a lot in Louisville, valued at from $3,000 to $4,000, in which appellant inherited a one-third interest subject to an estate by the curtesy in J. B. Schroer, his father. J. B. Schroer died in September, 1897, leaving an estate of some $8,000 to $10,000, which he devised equally to his three children. The will was probated in October, 1897, and in April, 1900, the asylum brought this action, under section 257 of the Kentucky Statutes, to subject this after-acquired property of Joseph Schroer to the payment of his board for 11 years. The defenses presented by the committee of the lunatic are: First. That by the judgment committing him he was adjudged a pauper; that that judgment is in full force, and the asylum and the State are bound thereby, and can not collect board from his estate. Second. That, if his estate is liable, it is at the rate of $150 per year, and not at the rate of $200, as claimed in the petition. Third. That all claim for the years prior to 1895 is barred by the statute of limitations.

The finding of the jury before whom the inquest was tried was that the lunatic owned no estate of any kind. Section 2158, Kentucky Statutes, requires the jury to find what estate, and the value thereof, the lunatic owns in possession, reversion, or remainder; whether his parents are alive, and whether they have estate sufficient to support the person under trial. By section 2161 the judge who presides at the inquest is required to endeavor to ascertain and draw up a brief history of the patient's case, which is sent to the asylum to which the lunatic is committed. The superintendent

of the asylum can not receive the lunatic as a patient without pay, in the absence of the judgment and the history of the case. Section 255. By section 256 it is provided that the finding of the jury as to whether the lunatic comes within the statutory definition of a pauper, so as to entitle him to be received without payment in advance, "shall be binding upon the superintendent." This, we think, means only that upon such finding the superintendent is required to receive the patient without payment in advance. An examination of these statutes, and of others, indicates that they are all regulations for the purpose of protecting the State against imposition. They are intended to prevent persons who are not lunatics, or persons who, though lunatics, have sufficient property for their support, being supported at the expense of the State. This inquest, in so far as it relates to the property of the lunatic, is in no sense an adjudication between the lunatic and the State, except in so far as it requires his admission into the asylum. This view—which is the one taken by the learned chancellor below-- is further strengthened by section 257, which seems to have been drawn to cover just such cases as the one at bar. Section 257, under which this suit is brought, is as follows: "Where patients, who have been or may be supported in either of said asylums, have or acquire estate which can be subjected to debt, the board of commissioners of such asylum, when reliably informed of the fact, is authorized and directed in every such case to sue for, in the name of the asylum, and recover the amount of such patient's board at the rate of two hundred dollars per year, or so much thereof as such estate will suffice to pay for the time they shall have been respectively kept and maintained therein, and not-otherwise paid for, and by proper proceedings to subject their estates, respectively, to the payment thereof;

and when the husband, wife or parent of such patient, who has been or may be supported in either asylum, shall have estate sufficient for the support of such patient, in addition to the support of any others who may be dependent of such husband or parent, in like manner to sue and recover from such husband the amount of his wife's board, and from such parent the amount of his or her child's board, at the rate aforesaid, for the time they shall have been respectively supported by such asylum. The net sum realized in such suits, shall be paid over to the State Auditor, who shall cover into the public treasury. In case of failure of suits, the expenses therefor shall be certified by the superintendent to the State Auditor, who shall provide for its payment out of the State treasury." By section 254 the commissioners are authorized to "charge for board of paying patients the same as is allowed by the State for pauper patients," which, by section 263, is $150 per year. And it is also provided that "the superintendent may provide special comforts for paying patients at an additional rate, not to exceed five dollars per week, if such are contracted for by their committees." This latter provision, being a matter purely of contract, does not seem to us to shed much light upon the construction of section 257. On behalf of appellant it is maintained that, the State having provided $150 per year for the support of each pauper patient, with a provision for covering back into the treasury any surplus not needed, that rate must be considered as ample to defray the cost. But by section 257 the commissioners are directed to sue for the patient's board at the rate of $200 per year where patients who have been or may be supported in the asylums have or shall acquire estate which can be subjected to debt. According to the strict letter of this statute, it does not permit the acceptance by the asylum authorities of the board of patients at the rate authorized to be taken from pay

patients, even though the committee, immediately upon the estate being acquired, should make tender of payment at such rate.    It is insisted that the additional $50 per annum is either an arbitrary exaction from a particular class of litigants, or a penalty or excessive attorney's fee charged against an unsuccessful litigant.    On the other hand, it is contended for appellee that the statute provides a proper and reasonable classification of patients; that the State makes no charge whatever against a pauper patient, but divides pay patients into two classes,—those who are admitted as such, and those who are admitted as pauper patients, but who are either improperly so admitted or subsequently become possessed of property sufficient for their support. We do not think this classification can be sustained.    There is no question here of the State's right and power to gratuitously support its pauper patients.    Nor is it a question of its power to fix or alter the rate at which it will receive pay patients in its asylums.    It is a question of whether it has the power to fix one rate for pay patients, who are admitted as such, and to increase that rate 33 1-3 per cent. for patients who are admitted as paupers, but subsequently become able to pay.    The distinction seems to us an arbitrary one, not justifiable by the fact that in the one case the payment is in advance and in the other at the end of a lawsuit.    Interest and costs are allowed to equalize that difference, and the statute can not exact a penalty in addition. It is a purely arbitrary discrimination, without any proper or reasonable relation to the object sought to be accomplished.   It is, moreover, peculiarly obnoxious, in that it discriminates against a class of unfortunates who have nothing to do with the action for which their estates are made responsible, but are unable to take any steps for their own protection, and whom the law does not hold responsible for

their own acts. We are of opinion that the statute, in so far as it authorizes the recovery of a greater sum from the estates of lunatics, under the circumstances disclosed in this case, than that authorized to be exacted from the estates of those who are admitted as pay patients, even if not a penalty, is in conflict with subsection 6 of section 59 of the Constitution, which forbids special legislation to affect the estates of decedents, infants, or other persons under disabilities. Nor do we think that the discrimination complained of is justifiable as a proper exercise of the police power of the State, for while the State has the right, for the good of society, to deprive a lunatic of his liberty, to appropriate his property for his support, and to contract for his support because of his incapacity to contract for himself, it can not impose a money penalty upon him because of his insanity, or because of acts for the doing of which the lunatic is not legally responsible.

It seems conceded that the statute of limitations (section 2515, Kentucky Statutes), applies to suits brought under section 257, before quoted. The limitation statute provides that "an action upon a liability created by statute, when no other time is fixed by the statute creating the liability, . . . shall be commenced within five years next after the cause of action accrued." The question to be considered is, when did the cause of action accrue to the commissioners? Such proceedings under section 257, in Central Asylum v. Penick, 102 Ky., 533, (19 R., 1583), (44 S. W., 92), were held to be essentially proceedings in rem to reach the estate of the lunatic, and subject so much of it as might be sufficient to pay the board account. This being so, the cause of action did not accrue until the patient acquired property which could be subjected to debt under the statutes relating to the support of insane patients, and the board of commissioners

are "reliably informed of the fact." On behalf of the asylum it is contended that, as all the parties labored under the mistake that the property an interest in which the lunatic inherited from his mother in 1890 belonged to his father, and the property was so assessed, the cause of action did not accrue until the commissioners discovered that the lunatic had an interest in the lot. The learned chancellor' held—and, we think, correctly—that the mistake could not stop the running of the statute, and that the commissioners of the asylum must be deemed to have had reliable information of the lunatic's title to the property derived from his mother's estate from the time when the title was of record, because then knowledge of the fact could be imputed to them by reason of their opportunity to discover it. But the chancellor held, and it is contended here, that the statute barred only the right of the commissioners to subject the estate derived by the lunatic from his mother in 1890, and did not affect their right to recover the entire claim out of the estate obtained from his father in 1897, and that the cause of action as to that property accrued only upon the father's death. We are unable to concur in this contention. Assuming that the proceeding is *in rem*, it is nevertheless a proceeding against the estate of the lunatic, not against the individual items which go to make up that estate. The cause of action of the asylum accrued upon the acquisition of property which could be subjected to debt, and the statutory period of limitation then began to run against the asylum's cause of action,—its right to subject the lunatic's estate to the payment of its claim, at least to the extent of the property then acquired. When that period expired, the right of action was gone. The right of action against the estate of the lunatic being once gone, it can not be revived merely because there is a subsequent addition to the estate.

It is suggested that the income only of the patient's estate should be subjected to the payment of his board. It would seem proper, in cases where it might be done without undue delay, to provide for the payment of such claims out of the income of the estate, and conserve the corpus of the estate so as to provide for his future support. It would seem probable that in this case the payment of the judgment may properly be thus provided for, and, if so, the chancellor should so provide.

For the reasons given, the judgment is reversed and cause remanded with directions to enter a judgment in accordance with this opinion.