CASE 93—ACTION BY LAURENCE PFANMILLER'S ADMINISTRATOR FOR A SETTLEMENT OF HIS INTESTATE'S ESTATE.—FEB. 11.

# Holburn v. Pfanmiller's Admr.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

HOMESTEAD—EXEMPTION—COMMITMENT TO INSANE ASYLUM—CLAIM FOR BOARD—ADMINISTRATORS—APPOINTMENT AND DUTY—SUIT TO SUBJECT REAL ESTATE TO DEBTS.

Held:  1. One who, having a wife and infant child, and a house which he has occupied as a homestead, induces a daughter, because of the infirmities of himself and wife, and their inability to provide for themselves, to move into the house with them, and to assume its expense and care, is still a housekeeper with a family, so as to be entitled to the homestead exemption.

2. One's character of homesteader, with the attendant rights of homestead exemption, is not lost by his commitment to an insane asylum, and the death of his wife while he is there.

3. Under Kentucky Statutes, section 257, providing that, where a patient who has been supported in a State insane asylum has estate which can be subjected to debt, the commissioners of the asylum may sue for and recover the amount of his board, and subject the estate to the payment thereof, such claim is not a debt; so that on death of the patient his homestead can not be subjected thereto, though section 1707 allows the homestead of a decedent to be sold, subject to the occupancy of his widow and infant children, if a sale is necessary to pay his debts.

4. Possession of an estate by a resident decedent is not, in the absence of statutory requirement, necessary to jurisdiction for appointment of an administrator.

5. An administrator who fails in a suit to subject property of decedent to his debts is chargeable with costs.

6. The mere fact that taxes have been assessed against real es-
tate of deceased which are not yet due does not constitute a
debt, authorizing a suit by the administrator to subject the
real estate to payment thereof.

O'NEAL & O'NEAL, ATTORNEYS FOR APPELLANT.

Laurence Pfanmiller was adjudged to be insane and a pau-
per and sent to Central Lunatic Asylum, where he was kept
until he died, December 2, 1899.    He had no estate except
a homestead worth less than $1,000.    Whilst he was in the
asylum his wife died, leaving the homestead in the possession of
one of his children. After his death his children, six sons
and three daughters, sold and conveyed the homestead to ap-
pellant, William Holburn.

John H. Weller, at the instance of the asylum, was appointed
administrator of Pfanmiller, and brought this suit to pay the
alleged debt of the asylum and taxes for 1900, making appel-
lant, Holburn, a party defendant, and seeking to set aside
the conveyance to him and subject the homestead to the pay-
ment of said alleged indebtedness.

For appellant, Holburn, we contend:

1. The verdict of the jury at the inquest that the decedent
was a *pauper lunatic,* is binding on the asylum until the pauper
acquires fresh estate, or unless he had property the existence
of which was unknown to the asylum authorities.

Decedent being entitled to homestead exemptions, the prop-
erty descends to his children in fee simple, regardless of any
debts, and consequently appellant can not be bound by any
claim against the same.

3. Appellant is the holder for value without notice of any lien
or recorded claim of any kind against the property.

4. Decedent left no estate to be administered upon and left
no debts, consequently the appointment and qualification and
subsequent actions of Weller as administrator, are utterly void.

AUTHORITIES CITED..

Schroer    v.    Central    Asylum,    24    R.,    150;    Humber    v.
Asylum, 16 R., 755; Sweeney v. Auditor, 4 R., 837; Kentucky
Statutes, sec., 257, 1706; Meyers v. Meyers, 89 Ky., 442; Phil-
lips v. Acton, 12 Bush, 375.

N. R. & H. M. PECKINPAUGH, ATTORNEYS FOR APPELLEE.

More than three months after the death of decedent, his
estate was, upon motion of the asylum, a creditor, referred to
J. H. Weller, the public administrator of Jefferson county for
settlement.    The homestead of decedent was conveyed by his

heirs to appellant, Holburn, March 19, 1900, and on March 20, 1900, this action was instituted. So that the said deed was made and delivered and this suit instituted within six months after the death of decedent.

We contend:

1. That the authorities cited by appellant do not support his contention that "the verdict of the jury at the inquest is binding upon the asylum until the pauper acquires fresh estate or unless he had property the existence of which was unknown to the asylum authorities."

2. "Decedent being entitled to homestead exemptions the property descended to his children in fee simple regardless of any debts, and consequently appellant can not be bound by any claim against the same," is so absurd that we are surprised that counsel for appellant should advance it with any sincerity.

The facts disclosed by the record, are, that decedent did not leave a widow, his wife having died before him, and that all his children were at date of his death over twenty-one years of age except Charles, who became of age a month or so after his father died, and we claim that under this state of facts all question of homestead exemption is eliminated; further that homestead was not pleaded in the lower court and was not an issue and can not now be interposed.

3. As to the question of notice we desire to say that the appointment of Weller as administrator was and is a matter of public record, and therefore notice to all the world—further appellant is presumed to know the laws of his State and he should have been familiar with section 2087, Kentucky Statutes, which was designed to protect the creditors of deceased persons from such frauds as this.

4. We contend that the taxes due the city of Louisville for the year 1900. and the claim of the Central Asylum for keeping deceased therein, are valid subsisting debts against his estate at the date of his death, and that under the laws of the State, the real estate of the decedent may be sold to pay such debts where the personal estate was insufficient as is shown in this case, and that the administrator is the proper one and has authority to institute an action therefor, and the fact that there was no personal estate belonging to deceased does not prevent such an action.

### AUTHORITIES CITED.

Sweeney v. Auditor, 4 Rep., 837; Humber v. Asylum, 16 R., 755; Schroer v. Asylum, 24 R., 150; Kentucky Statutes, secs. 1706, 1707. 2087, 257, 3006, 3903 to 3906, 3984, 4849; Civil Code, sec. 428, 429; Courts' Admr. v. Courts, 6 R., 512.

Holburn v. Pfanmiller's Admr.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING. ,

Lawrence Pfanmiller died intestate, an inmate of the Central Lunatic Asylum for the Insane of this State, on the 2d of December, 1899. He had been admitted under a verdict and judgment of the Jefferson circuit court (criminal division) May 4, 1897. At that time he had a family—his wife and one infant child. There were a number of children who were grown and had left home. Pfanmiller owned a small piece of real property in the city of Louisville, worth about $700 or $800. He had owned it for a number of years, and occupied it as a homestead. A short while before he was found to be a lunatic, he and his wife, because of their old age and infirmities, induced one of their married daughters to move into the house with them, and to assume its expense and care. The old folks were unable to provide for themselves, and were extremely poor. After Lawrence Pfanmiller was adjudged a lunatic and sent to the asylum, his wife continued to live at the home until her death, February 13, 1898. Something over three months after the death of Lawrence Pfanmiller appellee was appointed his administrator by the Jefferson county court upon the motion of the Central Lunatic Asylum for the Insane, and within a few days afterwards brought this suit against the heirs of Pfanmiller to subject the house and lot to the payment of the debts of the decedent. The only claim asserted or filed against his estate was one for $515 by the Central Lunatic Asylum, being the charge at the rate of $200 per annum for the board and support of Pfanmiller for the period during which he was confined there. Formal and somewhat elaborate preparation of the action was had in which the above claim was allowed, as a result of which the commissioner reported costs incurred in the action to the extent of $261.55 $150 of which was a fee to the administrator's attorney,

and $25 to the administrator for his services. The court allowed $100 only for attorney's fees, but allowed the remainder of the costs, and subjected the property to sale for the payment of the claim of the asylum and the costs above named.

The State has provided these charitable institutions at its expense for the care of those unfortunates whose mental condition requires them to be forcibly restrained. The system provides that those who are, or whose parents are, able financially to support them, must pay to the asylum the same charge for their keeping as is allowed by the State for the maintenance of pauper lunatics kept there. Section 256, Kentucky Statutes, reads as follows: "An insane person shall be held to be a pauper if unable to pay six months' board in advance, or, if married, be unable to pay said board besides providing for others naturally dependent; or, if a minor, the parent of said persons are unable to pay board besides supporting others naturally dependent on them. The court holding the inquest shall require the jury to return a finding on this subject, and this verdict shall be binding upon the superintendent." Lawrence Pfanmiller was admitted under this section as a pauper, and properly so. The jury had found and the judgment of the circuit court had adjudged, him to be a pauper. He was manifestly unable to pay the board besides providing for the others naturally dependent upon him, namely, his wife and minor child. Section 257 of Kentucky Statutes is: "Where patients, who have been or may be supported in either of said asylums, have or shall acquire estate which can be subjected to debt, the board of commissioners of such asylum, when reliably informed of the fact, is authorized and directed, in every such case, to sue for, in the

name of the asylum, and recover the amount of said pa-
tient's board, at the rate of two hundred dollars per year, or
so much thereof as such estate will suffice to pay for the time
they shall have been respectively kept and maintained
therein, and not otherwise paid for, and by proper proceed-
ings to subject their estates, respectively, to the payment
thereof," etc. In this action it is claimed by the asylum,
and by counsel for appellee, that under the section last
above quoted the property of the decedent is liable for this
claim. It is not contended that Pfanmiller had acquired
this property after his commitment to the asylum. It is
admitted that the property sought to be subjected was
owned by Pfanmiller at the time of his commitment. The
question, then, is, did Pfanmiller have an estate which could
be subjected to debt? The court is of opinion, under the
facts stated in this case that Pfanmiller was a housekeeper
with a family, so as to entitle him to the benefit of the
homestead exemption provided by the laws of this State;
and that, notwithstanding the death of his wife, and of his
enforced absence from his home by reason of his commit-
ment to the asylum, he did not lose the character of home-
steader, nor any of its rights. We therefore conclude that
there was no period during the life of Lawrence Pfanmiller
and since his commitment to the asylum when he owned
any "estate that could be subjected to debt." It is true
that our statute (section 1707) allows the homestead of a
decedent to be sold, subject to the occupancy of his widow
and infant children, if a sale is necessary to pay his debts.
But, strictly speaking, the claim of the asylum is not a
debt. It is true it is a charge provided by law against cer-
tain estate of the lunatic—not against him—to be enforced
*in rem* in the contingency and manner only prescribed by
the statute. Central Lunatic Asylum v. Penick, 102 Ky.,

533, 19 R., 1583, 44 S. W., 92; Schroer v. Central Lunatic Asylum, 113 Ky. (24 R., 150) 68 S. W., 150; Central Lunatic Asylum v. Drane, 113 Ky. (24 R., 176), 68 S. W., 149. The court declines to enlarge by the process of construction the terms of this statute, intended primarily as a regulation of the State's charitable purposes toward this class of un-fortunates so as to make it include estates not clearly and specifically subject by its terms. If the Legislature should hereafter deem it wise and just to subject the homesteads of deceased pauper lunatics to the payment of the charge for their support while kept in the asylum, they will proba-bly do so as explicitly as they have allowed all homesteads to be subjected to the payment of the debts contracted by the deceased himself—i. e., after his death—subject to the right of occupancy by the widow and his infant children. Without noticing certain features of the improper charge embraced in this claim of the asylum, the court is of opin-ion that it should have been rejected in toto.

This brings us to the consideration of another feature of this suit; that is, the right of the administrator to main-tain this action under the circumstances, and especially of the liability of decedent's real estate to the rather ex-traordinary bill of cost brought about by this suit. No one could have died with less of personal estate than Law-rence Pfanmiller had, for he had none. The record shows that he had not even a rag, nor was it supposed that he had. He had been admitted to the asylum as a pauper. It knew that fact, and had so entered it upon its books. It procured the appointment of the administrator, and doubt-less apprised him of the condition of the decedent's estate so far as it had information. Nor is there a suggestion in the record, save as to the item of taxes, which we will no-tice presently, that the decedent owed anything besides the

claim to the asylum. Indeed, there does not appear to have been the slightest necessity for an administrator to this estate. Under this state of facts appellant contends that the appointment of the administrator was void. In this we can not concur. Unless the statutes so require, and except in the case of nonresident decedents, the possession of an estate by the decedent is not a prerequisite to the jurisdiction for the appointment of an administrator. Section 93, Schouler on Executors and Administrators, and cases collated at page 762, 11 Am. & Eng. Ency. of Law (2d Ed.). Our statutes on this subject are as follows:

"Sec. 3894. When any person shall die intestate, that court shall have jurisdiction to grant administration on his estate that would have jurisdiction to probate his will had he made one."

"Sec. 4849. Wills shall be proved before, and admitted to record by the county court of the county of the testator's residence; if he had no known place of residence in this Commonwealth, and land is devised, then in the county where the land, or part thereof, lies; if no land is devised then in the county where he died, or that wherein his estate, or part thereof, shall be, or where there may be any debt or demand owing to him."

The decedent's place of residence in this Commonwealth was Jefferson county. Therefore, under these statutes, that court had jurisdiction to appoint an administrator. Jurisdiction to appoint an administrator, however, does not mean that an administrator is necessarily to be appointed in the case of every one who dies intestate. If the court deem it proper, or probably even if it have doubts about the propriety of the appointment, it should be made. The rights and duties of such administrator are another question. His right is to have the possession and custody of

the personal property of the decedent not exempt under the statute from distribution and sale, to collect the debts and demands due the decedent, to pay same to the creditors and distributees, and to represent his estate in litigations against it seeking to charge it with a personal liability. Under section 428 of the Civil Code of Practice "a representative, legatee, distributee or creditor of a deceased person may bring an action in equity for the settlement of his estate." If personal estate has come to the hands of the adminstrator which is insufficient to satisfy all of the debts of the decedent, and if there is real estate descended, the personal representative is authorized by this section to institute an action for the settlement of the estate, for he is interested therein. His own accounts, the priority of claimants to the funds in his hands for distribution, the extent of the pro rata that may be adjudged against the personal estate in favor of the creditors, are matters about which he is entitled to have the conclusive judgment of a court of competent jurisdiction for his own protection. For simplicity, and to avoid numerous suits, he is permitted to bring in the heirs at law and have the real estate subjected in so far as the personal property is insufficient to pay the debts. But where there is no personalty, where nothing has come or can come to the hands of the administrator (in this State he having neither right nor duty to take charge of the realty of the decedent, or rents accruing after his death), it is doubted if he should bring a suit for a settlement of the estate. The Code authorizes any creditor or distributee of a deceased person to bring such an action in their own behalf. In the case at bar there is no excuse for the intermeddling of an administrator. He has no accounts for settlement, no liabilities from which to be discharged, no interest to be

protected. The sole apparent purpose of such a litigation can be only either to aid at the extraordinary expense of the heirs at law some claimant in the litigation against the decedent's estate, or to get for the administrator or his council certain fees for their services. In the absence of some tangible personal estate, choses in action, or debts owing to the decedent, the administrator may properly refrain from bringing such an action; but if he should have doubts as to his duties in the premises, and as to the assets and liabilities of his intestate, the action will be brought subject to the relief finally granted; that is, if it should be finally adjudged that the decedent owed nothing, and there was nothing that came or could come to the hands of the personal representative for administration, the action should be dismissed, as to the defendants, with a judgment to them for their costs. If the administrator fails to make good the allegations of his petition, he should not be allowed to burden the heirs at law with an onerous bill of costs, but should be turned out of court upon the same terms as other unsuccessful litigants.

An effort was made to show that the decedent owed taxes to the city of Louisville when the suit was brought. The taxes had been assessed, it is true, on the 1st of September, but were not due until some time after this suit was brought. The city did not present a claim, and is not claiming in this action that decedent owed it anything for taxes or otherwise. The tax was against the real property, and a lien thereon, it is true, but it is not a debt; and, at any rate, there was no excuse for this premature suit to have the property subjected to its payment by a suit in chancery before there had been default by those legally chargeable therewith.

The judgment is reversed, and cause remanded, with directions to dismiss the petition, as well as the cross-petition of the Central Lunatic Asylum for the Insane.

Petition for rehearing by appellee overruled.