CASE 2—PETITION ORDINARY—APRIL 17.

## Nutall's adm'r vs. Brannin's ex'rs.

### APPEAL FROM OLDHAM CIRCUIT COURT.

1. The answer of the administrator alleged that the plaintiffs did not, before the commencement of their action, present the debt claimed by them to be owing by his intestate, and demand the same, accompanied by the affidavits required by law, and asked a dismissal of the action on that ground. After filing his answer at a subsequent term of the court, the administrator obtained a rule upon the plaintiffs to exhibit the evidence that they had made a demand of the claim set up, with the proper affidavits required by law. The plaintiffs having made an insufficient response to the rule, it was discharged by the circuit court, and judgment rendered after trial. On appeal, the response is held to be insufficient, *the judgment reversed, and the action ordered to be dismissed.*

2. Having laid the proper foundation in his answer, the administrator may, at any time before trial, have a rule against the plaintiff to exhibit the evidence that he had made a demand of the claim set up, with the proper affidavits required by law, and on the plaintiff's failure to show a compliance with the requirements of the law in this respect, the petition should be dismissed. (*Revised Statutes, secs.* 35, 36, 38, *chap.* 37; *Civil Code, sec.* 473.)

3. An action by a surety in a note or bond, for money alleged to have been paid thereon by him for the benefit of his principal, *is an action on account* for the money so alleged to have been paid, and *not an action on the note or bond itself.* Such action being against a personal representative, the affidavits required by law should be made

to the account. Such affidavits to the note or bond are insufficient. The note or bond is not the foundation of the action, but the action is upon the implied promise raised by law that the principal should refund the amount paid by his surety.

4. As the debt claimed was nothing more than an account, it was the claimant's duty, before he commenced his action against the personal representative, to have demanded payment, and to have accompanied his demand with proof of the account, as well as with his own affidavit, as was required before the passage of the acts above cited. An affidavit of a competent witness must accompany the account, that affiant knows the same to be just and correct. (*Trabue's ex'r vs. Harris*, 1 *Met.*, 597.)

5. A witness may discharge himself generally on his *voire dire*, without the production of documentary proof. In this case the circuit court properly permitted a witness to testify without producing the will of his father to show he had no interest in his estate.

6. *Proof of the loss of a letter*—that witness "had delivered the letter to one of his attorneys, who had it the last time he saw it; that the attorney said he could not find it, and that it was lost." It not being suggested that the attorney was not living, and the attorney not being called on to show what had become of the letter, it was not sufficiently accounted for to admit secondary evidence of its contents.

7. APPLICATION OF CREDITS ON PAYMENTS.—If the debtor owed the creditor more than one debt when he made a payment, he had a right to direct on which debt the credit should be entered; and if he failed to exercise that right, then the creditor had the right to elect on which debt *he* would place it; but if he had not placed the credit on either debt, and there was no evidence that he had exercised that right, *it was erroneous in the circuit court to instruct the jury that they had a right, in the absence of any evidence of that fact, to apply it as they pleased.* Such instruction made the jury judges of the law. *It was the duty of the court to direct to what debt the credit should be then applied.*

JOHN M. HARLAN,
I. N. WEBB, and
JOHN RODMAN,                                    For Appellant,
                        CITED—

> *Revised Statutes*, 1 *Stanton*, 509–10–11.
> *Civil Code, section* 473 ; 1 *Met.*, 24.
> 1 *Greenleaf's Ev.*, secs. 88, 560, *and note.*

PRYOR & BARBOUR, and
T. N. & D. W. LINDSEY,                    For Appellees,

CITED—

*Revised Statutes,* 1 *Stanton,* 509.
1 *Greenleaf's Ev.,* sec. 95.
*Civil Code, secs.* 674, 161, 896.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

In March, 1864, appellees, executors of D. Brannin, brought an action on three several promissory notes executed by E. F. Nutall, deceased, to their testator—one on the 5th of April, 1855, and the other two on the 7th of the same month and year, amounting in the aggregate to one thousand one hundred and twenty-nine dollars and fifty-eight cents, against John C. McCreary, his administrator.

On the 10th day of December, 1864, while the first-named action was pending, they brought another action against the same defendant, alleging that on the 6th of November, 1848, defendant's intestate executed a bond to Henry Radford, commissioner of the Shelby circuit court, for six hundred dollars, due four months after date, with their intestate as his surety; that after the maturity of said bond, Nutall failed to pay the same; that their testator, as his surety, paid to the said court's receiver the amount of said bond with the accrued interest, and that Nutall had never refunded the amount thus paid; and they sought judgment for the sum alleged to have been paid on said bond as the surety of said intestate.

In the 1st paragraph of his answer the defendant alleges that the plaintiffs did not, before the commencement of their action, present the debt claimed by them to be owing by his intestate, and demand the same, accompanied by the affidavits required by law, and asked a dis-

missal of the action on that ground. Lapse of time, payment, and the statute of limitations, were pleaded in bar of the action. These defenses in bar were relied upon in the other action; and the two were consolidated, and heard together as one action, by agreement of the parties; and a verdict and judgment having been rendered against the administrator of Nutall, he has appealed to this court.

At the April term, 1866, of the court, appellant obtained a rule upon appellees to exhibit the evidence, that they had made a demand of the claim set up in the last action, accompanied with the proper affidavits, as required by law. In response to the rule, A. O. Brannin, one of the executors, filed his affidavit, in which he states that to the claim was appended the affidavit of Culvin Sanders, "in which he stated that the note filed with the petition was fully paid off, was just AMT.; that it was paid off by Daniel Brannin; that Daniel Brannin was the scy. on the note. All these facts were set forth in the affidavit; that the affidavit was with the claim before suit brought, and with the note when presented to the administrator of E. F. Nutall for payment, and was filed with the suit in—institution thereof; he says the affidavit has been lost or mislaid."

On the filing of the foregoing affidavit, the rule was discharged; and that ruling of the court is complained of by appellant as erroneous.

For appellees it is insisted, that whether the affidavit of Brannin was sufficient or not, the rule was properly discharged—1st. Because there was no sufficient foundation for it; and, 2d. That even if there had been, the motion for the rule came too late under the ruling of this court in *Thomas' ex'r vs. Thomas*, 15 *B. Mon.*, 178.

The statement in the answer in relation to the previous demand is, that defendant denies that "the plaintiffs, be-

fore the commencement of their action, presented their demand claimed by them in this action, accompanied by the affidavits required by law, to this defendant, and demanded payment thereof." This is deemed quite sufficient; it denies that the demand was made of the debt of him, accompanied by the affidavits required by law. No affidavits are required to be made except those prescribed by section 35, chapter 37, volume 1, Revised Statutes, 509; and the proof of its justness, which was required before the adoption of the *Revised Statutes*—the statement in the answer must have referred to those, and to none other, and was, therefore, sufficiently specific. Was the right to the rule waived by appellant? The language of the 35th section, *supra*, is, that "all demands against the estate of a decedent shall be verified by the written affidavit of the claimant, or, in his absence from the State, by his agent, or if dead, by his personal representative, stating that the demand is just, and has never, to his knowledge or belief, been paid, and that there is no just offset or discount against the same, or any usury embraced therein.

By section 37 it is provided, that "no demand against a decedent's estate shall be paid by his personal representative, or allowed as a credit by any commissioner or court, which is not verified by affidavit as above required."

And section 473, Civil Code, after declaring that nothing in said Code shall be construed as dispensing with sections 35, 36, and 38 of article 2 of chapter 37, Revised Statutes, *supra*, provides that "no suit shall be brought against a personal representative, until after a demand is made of him, accompanied with the affidavit required."

It would seem, from the imperative language of these enactments, and the emphatic prohibition of any pay-

ment by a personal representative contained in section 37, *supra*, and the withholding any remedy by suit in the section of the Code quoted, that the Legislature intended that, before payment could be enforced, by judgment against a personal representative, it should appear, by allegation or proof, or both, that the verification required by law had been made.

In *Thomas' ex'r vs. Thomas* (15 *B. Mon.*, 178), it appears that the appellee, who was plaintiff below, did not file the affidavits required, and made no proof of a demand of payment, accompanied with the proper verification; and when he closed his evidence, the appellant asked the court to instruct the jury peremptorily to find for him. This motion the court overruled; and after the evidence on both sides was closed, the defendant moved the court to tell the jury "that they cannot find for plaintiff, unless they find from the proof, the claim sued on had been duly certified by the affidavit of the plaintiff in writing, and a demand made before suit, for the debt sued for." These instructions, this court said, were properly refused; and, in commenting on the sections of the Revised Statutes and the Code quoted, the learned judge who delivered the opinion said: "But as the affidavit, upon principle, cannot be regarded as affecting the merits of the demand sued for, a failure to require its production before answer should be esteemed as a waiver of objection for want of it."

There might not be any impropriety in ruling that a defendant had waived his right to require the production of the prescribed affidavit and evidence of a demand of the claim sued for, who had failed to require the production of them until after the trial had progressed, and the plaintiff had closed his evidence; and that was the case of *Thomas' ex'r vs. Thomas, supra*.  Whether or not a per-

sonal representative has not the right, at any time, by laying the proper foundation therefor, to require the evidence that these requisites of the statute had been complied with before he brought his action, was not then before the court for adjudication. The law requires plaintiffs suing personal representatives to do these things; they must know it; and they should be able to make the necessary proof of their compliance. These enactments were made to shield the estates of decedents from unjust demands, and to furnish such evidence to the representative of the correctness of the debt as would authorize him to pay it without being subjected to the costs of an action, and incurring personal liability; and to decide that a personal representative should not, after he filed an answer, require evidence that these enactments had been complied with, is to attach to them a qualification that the Legislature failed to do, and which this court has no power to do, nor inclination to see. The rule was, therefore, properly awarded. The next inquiry is, was the evidence sufficient to authorize the discharge of the rule?

The note executed by Nutall, with Brannin as his surety, to the commissioner Radford, was not the foundation of the action; but it was on the implied promise, that the law raised, that he should refund to Brannin the amount he had paid for him as his surety; that was the foundation of the action. If the note had been the evidence of a debt owing by the former to the latter, then the presentation of the note, accompanied with the affidavit of the claimant of said note at the time the demand was made, would have been all that was required; but as the debt claimed was nothing more than an account, and therefore, in addition to the affidavit of the claimant, he is also required to make such other

proof as was required before the passage of the acts which have just been commented on. An affidavit of a competent witness, must accompany the account that the affiant knows the same to be just and correct; and when thus verified and proved, the personal representative is furnished with a voucher, which is *prima facie* evidence that its payment by him was proper, and entitles him to a credit therefor in the settlement of his fiduciary accounts. (*Trabue's ex'r vs. Harris*, 1 *Met.*, 597.)

According to the evidence of appellee, A. O. Brannin, Sanders, only stated in his affidavit that the *note* was fully paid off; that *it*, the note, was just "*amt. ;*" that it was paid off by Brannin, and that he was the surety on the note; but he does not state that the account of appellees against appellant's intestate was just and correct, either according to his knowledge or his belief; all he has stated in his affidavit may be true; and yet he may know that Nutall paid to Brannin what he had paid for him on the note. It is certainly no verification of the justness of the claim against the estate of the intestate, and was, therefore, insufficient. (*Trabue's ex'r vs. Harris, supra.*)

A. O. Brannin was a competent witness according to his showing; nor did the court below err in permitting him to testify without producing the will of his father to show he had no interest in his estate.

In 1 *Starkie on Evidence*, 120, it is said a witness may discharge himself generally on the *voire dire* without the production of documentary proof; but the proof of the loss of the letter addressed by Nutall to Brannin was insufficient to admit secondary evidence of its contents. Brannin proved that he had delivered the letter to one of his attorneys, who had it the last time he saw it; that the attorney said he could not find it, and that it was lost. It is not suggested that said attorney was not

living, and he was not called as a witness. The paper was traced to his hands; but *he* was not called on, to show what had become of it. The paper, therefore, had not been sufficiently accounted for to admit the evidence. (1 *Starkie*, 350, 351.)

As to instructions, those which appellant asked were given; and he cannot complain of them. Nor does there appear to be any available objection to the two given by the court in lieu of those asked by appellees; but the third instruction, given on motion of appellees, is objectionable. If Nutall owed Brannin more than one debt when he made a payment, he had a right to direct on which debt the credit for the payment should be entered; and if he failed to exercise that right, then Brannin had the right to elect on which debt he would place it; but if he had not placed the credit on either debt, and there was no evidence that he had exercised that right, and there was none in this case, it was erronous to tell the jury they had a right, in the absence of any evidence of the fact, to apply it as they pleased; that was making them judges of the law. It was the duty of the court to direct to what debt the credit should be then applied.

Wherefore, the judgment is *reversed*, and the cause is remanded, with directions to dismiss the action brought December, 1864, for money paid by testator as surety of the intestate to Radford the commissioner, without prejudice, and for further proceedings in the other action in accordance with this opinion.