## Moore's Administrator v. Pierce, etc.

(Decided October 6, 1914.)

Appeal from Franklin Circuit Court.

1. Contracts—Services—Care and Attention of Invalid—Action Upon Contract for.—An action was brought by P. and wife upon an express contract for services performed by each of them in caring for decedent. The action abandoned by the husband and prosecuted by the wife. Held, as the verdict was for only $750.00, appellant was not prejudiced by an instruction authorizing the jury to award the wife $2,000.00, the original claim.

2. Contracts—Services—Action for—Pleading—Continuance.—It was not error to refuse continuance in an action for services for the care of another because of the filing of an amended petition setting up an implied contract to conform to the proof, appellant having admitted an express contract to pay for services charged in the petition, and admitting the rendering of extra services.

3. Contracts—Services—Action for Care of Decedent.—The petition alleging that the claim had been proved and payment demanded, an allegation was not necessary that demand had been made of administrator before suit was brought.

4. Contracts—Action for Services for Caring for Decedent—Evidence.—The strict rule of evidence with reference to expert testimony does not apply to an action of this character, and it was competent for the neighbors to testify as to value of services without qualifying as experts.

5. Contracts—Action for Services in Caring for Decedent—Evidence.—In this action, while it was incompetent for the wife to testify, her testimony complained of was not prejudicial to appellant, as it served to confirm his theory of the contract.

O'REAR & WILLIAMS for appellant.

LESLIE W. MORRIS for appellees.

Opinion of the Court by Judge Nunn—Affirming.

This is a suit by Mary Pierce, wife of Ernest Pierce, to recover of the estate of David Moore, deceased, $2,000 for care, nursing and attention given to him during the last two years and two months of his life.

David Moore owned and resided on a farm of 125 acres in Franklin County. His wife died in the fall of 1909. He was sixty-three years old at the time, and having no children, he desired Pierce and his wife to make their home with him. Mrs. Pierce was a niece of Mrs. Moore. The Pierces were not land owners, and being poor people, the offer of Mr. Moore met with their instant favor, and in a very few days after Mrs. Moore's death, the Pierces were installed in the Moore home.

From the proof we gather that Mr. Moore, who weighed about 250 pounds, was unable to do any manual labor. While most of the time, he could walk about the yard and barn and feed the stock, yet he required the aid of some such persons as the Pierces. For a good part of the time, he was able to ride in a buggy to Frankfort, of Saturdays, and bring to town farm produce for sale, but either Mr. or Mrs. Pierce had to hitch and unhitch the horse. She washed his feet, and washed his clothing. Early in the year, 1910, a sore came on his face, and this continued as an open running sore, growing more malignant, until his death, and causing his death, as we infer from the proof. The sore was not only painful to Mr. Moore, but the odor from it was very offensive. The proof shows that Mrs. Pierce bathed and dressed this sore from its origin until his death. Because of his infirmities, the Pierces slept in the same room with him, so that they could be ready to give him any needed attention at all times. As above stated, Mr. Moore had no children. He had some brothers and sisters living in the same county, but they never visited him, and with some of them he was not even on speaking terms.

It is very evident, that during all or most of this time Mr. Moore required care and attention of someone, and that no one but the Pierces assumed any such obligation or duty. It is not disputed that Mrs. Pierce acted toward Mr. Moore like a daughter, and that no one could have been more kind and efficient.

The original action was instituted by Pierce and his wife jointly. It was based upon an express contract, and alleged that the $2,000 claim had been properly proven

and demand made of the administrator for payment. A copy of the claim and proof was filed as an exhibit with the petition. At a result of defendant's motion to require plaintiffs to elect whether the action would be prosecuted for the husband or wife, the husband's action was abandoned. In as much as the petition shows that some of the services were performed by the husband, and, when his action was abandoned, no reduction was made in the amount of the whole claim, the appellant insists that the court erred when an instruction was given permitting a finding for the wife to the extent of $2,000.

The service which the husband rendered, and was charged for, was nothing more than feeding stock, hitching up the horse, and cutting wood, the value of which must have been small compared with the other services enumerated. As the verdict of the jury was for only $750, it is evident that the appellant was not prejudiced by the instruction authorizing the jury to award as much as $2,000.

At the conclusion of plaintiff's evidence, it was contended that there was a failure of proof as to an express contract, all the proof going to show an implied contract. Over appellant's objection, plaintiff was permitted to file an amended petition, setting up an implied contract to conform to the proof. The appellant's objection to the filing of this amendment being overruled, a continuance was asked for. The refusal of the court to grant this continuance, is another error relied upon by appellant. In the first place, we do not see the necessity of any amendment setting up an implied contract. The appellant by an amended answer, admitted that there was an express contract between the parties by which the plaintiffs were to be paid "for the services charged for in the petition," and also admitted that the plaintiff did extra service in the way of nursing during the last few weeks' illness of Mr. Moore, and alleged a willingness to pay $100 for this extra service. In fact, from the pleadings, the only difference between the parties was the manner and amount of payment and value of the services rendered. Although the proof is conflicting on these questions, we think there was sufficient evidence to sustain the verdict.

Reverting again to the alleged error of the lower court in refusing a continuance when the amendment was filed, it is sufficient to say that it made no material

change in the cause of action, and from the record, it is not apparent that the appellant was at all prejudiced.

As required by Section 136 of the Code, appellant should have satisfied the court by affidavit, or otherwise, that he could not proceed with the trial in consequence of the amendment. No affidavit was offered, nor is any reason shown for the continuance, other than the mere filing of the amendment. In discussing the effect of Section 136 of the Code, in the case of Troendle v. Morgan Coal Company, 114 S. W., 312, this court said:

"Under this provision, when an amended pleading is filed on the eve of the trial or during the trial, or out of the regular order of procedure, the adverse party, if he desires a continuance, should inform the court by affidavit or otherwise why the amended pleading is of such a nature as that he cannot be ready for trial in consequence thereof, so that the court may know the reason for asking a continuance and rule intelligently thereon. As counsel for defendant did not observe this practice, we are not disposed to say the court erred in refusing to grant a continuance upon this ground."

Another error complained of is, that no proof was offered that a demand had ever been made of the administrator for payment before suit was brought. The petition alleges that the claim had been proven and payment demanded. This allegation was not at all necessary. Newman on Pleadings and Practice, Section 396i.

The appellant, however, by answer, joined issue on this proposition, but no witness was asked in regard to it. Had this been a material issue, the action would have failed for want of proof. But this court has held that defendant must object to the want of affidavit and demand before filing an answer or even a general demurrer, else, it will be regarded as a waiver. The better practice is, that the defendant by motion based upon his own affidavit, should obtain a rule against the plaintiff to show cause why the action shall not be dismissed for want of affidavit and demand. Thomas v. Thomas, 15 B. Mon., 181; Nuttall's Admr. v. Brannin's Exr., 5 Bush, 11.

Appellant complains that the neighbors were permitted to testify as to the value of the services rendered without previously qualifying as experts on the subject. The strict rule of evidence with reference to expert testimony does not apply on a question of this kind. The subject matter is one of common knowledge with the

people generally, as well as the jury, who heard the testimony. When the nature of the infirmity is shown, with the necessity of extra care and attention, a scientific knowledge of the malady or of the care required, is not necessary to render the witness competent to testify as to the value of such service as cooking, washing feet, waiting on and nursing a sick person. The case of Green's Exr. v. Green, 119 Ky., 103, was to recover of the decedent's estate the value of services rendered in the way of nursing, etc. A similar objection was raised to the competency of the testimony proving the value. The court said:

"These were the neighbors and friends of both the appellee and his deceased uncle. They all professed to know the nature of the services rendered, and their value, and, while they were not professional nurses, we think they were competent, under the circumstances, to express an opinion as to what the services were reasonably worth."

A final objection was made concerning the testimony of Mrs. Pierce and her husband. Of course, under Section 606 of the Code, Mrs. Pierce was not a competent witness to testify for herself against the estate of decedent, and neither was Mr. Pierce a competent witness to testify for his wife. The record shows that Mrs. Pierce was introduced and asked three questions. To the first, she gave her name; to the second and third, she testified that she and her husband furnished two-thirds of the "eatings and everything about the home." This being all of her testimony, and it serving to confirm appellant's theory of their contract, it was not prejudicial, although erroneous.

Ernest Pierce was then introduced, and, while answering a few more questions, his testimony went only to the same effect, except that he showed the length of time they lived with Mr. Moore, viz.: Two years, two months and twenty-eight days, and that his wife, "washed and cooked and done everything there was for a woman to do." The record shows, "At this point the plaintiff's attorney withdrew the witness, Ernest Pierce." While it does not appear that his testimony was withdrawn, yet, there is no issue in the case as to how long the Pierces lived with Mr. Moore, and the fact, that she washed, cooked and did everything there was for a woman to do, is not seriously disputed.

The appellant conceded that Mrs. Pierce was entitled to as much as $100 for the service, and tendered that sum. From her proof, she was entitled to much more. The amount awarded her by the jury is not extravagant, nor flagrantly against the evidence. While the proof is conflicting, it was a matter for the jury to determine, and we do not see sufficient reason for disturbing their verdict.

The judgment is, therefore, affirmed.