## Eastern State Hospital v. Lyttleton.

(Decided September 28, 1917.)

### Appeal from Rowan Circuit Court.

1. Insane Persons—Lunatics—Action to Enforce Liability for Support—Pleading.—In an action by a state hospital, under section 257 of the Kentucky Statutes, to recover board for the maintenance of a lunatic, it is not necessary for the plaintiff to allege and show that the lunatic was dangerous, violent, and uncontrollable, thereby rendering him unsafe to be intrusted to the care and control of his committee, or friends. A petition which alleged that the plaintiff hospital had boarded a lunatic for the time therein specified; that he was unmarried, without family, and was not a housekeeper, and had no one depending upon him for support; that the debt was unpaid; and, that his committee had in his hands $915.40 belonging to the lunatic, stated a cause of action.

2. Insane Persons—Claim for Support—Practice.—The proper proceeding to raise the question of the failure of the plaintiff to make the statutory affidavit in support of a claim against the estate of a lunatic, is by pleading, or by rule to show cause why the case should not be dismissed; not by demurrer.

B. S. WILSON and B. S. GRANNIS for appellant.

E. HOGG and JAMES CLAY for appellee.

Opinion of the Court by Judge Miller—Reversing.

On April 23, 1912, Joe B. Lyttleton was found to be of unsound mind and a lunatic, by a judgment of the Rowan county court. He was committed to the Eastern State Hospital, where he has been maintained and cared for until the present time.

On February 3, 1916, the Eastern State Hospital filed this action against Lyttleton and his committee to recover $617.77 for Lyttleton's support and maintenance from April 24, 1912, to January 1, 1916, at the rate of $150.00 per annum. The circuit court sustained a general demurrer to the petition, and the plaintiff appeals.

It is claimed that the petittion is defective for two reasons: (1) Because it fails to allege that Lyttleton was a dangerous, violent or uncontrollable lunatic and unsafe to be intrusted to the care and control of his committee or friends; and (2) because it fails to allege that the account is just, and that there is no discount against the same, that it is not entitled to any credit, and that there is no usury embraced therein.

1. In order for the plaintiff to recover for the maintenance of a lunatic committed to its care, is it necessary for it to allege and show that the lunatic was dangerous, violent and uncontrollable, thereby rendering him unsafe to be intrusted to the care and control of his committee or friends? A decision of this question requires a consideration of the several statutes upon the subject.

Section 247 of the Kentucky Statutes provides, among other things, that harmless, incurable lunatics shall be returned by the asylum in which they may be confined to the several counties from which they were sent, and delivered into the care of their friends, if any, and if they have no friends, then to the county judge, who shall make suitable provisions for their keeping, out of the annual appropriation allowed for such persons; and the officials of asylums are therein directed to send each paying patient of that class to the county of his residence, or whence he came, and deliver him to his committee or friends. Section 251 further provides that the trial court shall make no order sending a pauper idiot to an asylum, and that no such idiot shall be received therein unless the jury, by their verdict, on inquest, shall find that he is so dangerous and uncontrollable that he cannot safely be kept by a committee within the county.

Section 254 provides that the hospital may charge for board of paying patients, the same as is allowed by the state for pauper patients, which is fixed by section 263 of the statutes at $150.00 per year. Section 255 provides that only pauper patients shall be received or retained in the asylums of the state, unless six months' board shall always be paid in advance, and the board for the residue of the time they may remain in the asylum be secured by the obligation of one or more satisfactory residents of this state.

Section 256 defines a pauper patient as follows: "An insane person shall be held to be a pauper if unable to pay six months' board in advance; or, if married, be unable to pay said board besides providing for others naturally dependent; or if the parents of said persons are unable to pay board, besides supporting others naturally dependent upon them, the court holding the inquest shall require the jury to return a finding on this subject, and the verdict shall make it the duty of the superintendent to receive the patients, but such verdict shall not limit or qualify such patient's liability for his board should he have or acquire estate subject to debt."

Section 257 further provides:

"Where patients, who have been or may be supported in either of said asylums, have or shall acquire estate, which can be subjected to debt, the Auditor of Public Accounts is authorized and directed in every such case to sue for in the name of the asylum and recover the amount of such patient's board, at the rate of two hundred dollars per year, or so much thereof as such estate will suffice to pay for the time they shall have been respectively kept and maintained therein, and not otherwise paid for, and by proper proceedings subject their estates, respectively, for the payment thereof; and when the husband, wife or parent of any such patient, who has been or may be supported in either asylum, shall have estate sufficient for the support of such patient in addition to the support of any others who may be dependent on such husband or parent, in like manner to sue and recover from such husband the amount of his wife's board, and from such parent the amount of his or her child's board, at the rate aforesaid for the time they shall have been respectively supported by such asylum, and the statute of limitations providing the time in which actions for such recovery may be instituted shall not run against recovery herein provided for until from and

after the time at which said estate is acquired.'' So much of this section as fixed a charge of $200.00 per year for board is unconstitutional as to the excess over $150.00, the amount allowed by section 263 for the board of a pauper patient. Schroer v. Central Asylum, 113 Ky. 288.

Section 2156 of the Kentucky Statutes provides a method of holding inquests of lunacy and makes it the duty of the presiding judge to make all necessary orders for the appointment of a committee, the security of the estate, and the care of the person found to be of unsound mind, imbecile, or incompetent of handling his estate. And it is therein further provided that the judge may order a person found insane to be committed to the lunatic asylum when it would be proper for a court to do so; ''but in no case shall an order be made sending an idiot to an insane asylum, unless the jury, by their verdict in the inquest, shall find he is so dangerous and uncontrollable that he cannot be safely kept by a committee at home.''

Section 2161 further makes it the duty of the trial judge to ascertain what estate, if any, a lunatic has in possession, remainder, or reversion, and what estate his parents, if any, have, and if a married woman, what estate her husband has; and these facts shall be embraced in the history of the patient's case and sent with the record to the asylum to which the lunatic is sent.

Section 2165 further provides:

''A person is a pauper idiot, or lunatic, within the meaning of this chapter, who has been found by the verdict of a jury to be an idiot or lunatic, and that he has no estate sufficient for his support; and also that his parents, if alive, have not sufficient estate to maintain him, and if a wife, that her husband has not sufficient estate to support her, and that he is unable to work for a support; and the order of the court making and certifying the annual allowance for the support of the idiot, shall be made on proof, and so state, and shall also state that the idiot is then alive, and a pauper. Upon such certificate, if a copy of the inquisition required to be filed by the provisions of this chapter has been filed with the auditor, he shall issue his warrant upon the treasury for the amount allowed by law.''

From a reading of these several statutory provisions the circuit court was of the opinion that a harmless lunatic could not properly be committed to the care of a

state hospital, since the statute made it the duty of the state officers of the several asylums to return such persons to the county judge, or to their friends, and that it was only in case that the lunatic was dangerous, violent and uncontrollable and consequently unsafe to be intrusted to the care and control of his committee or friends (which is not here alleged) that he could properly be committed to the state institution, at the state's expense, and charged therefor in case he had sufficient property or money to pay the debt after supporting those who were dependent upon him. We cannot concur in this conclusion of the circuit judge, since section 257 of the statutes, above quoted, requires the state auditor to take steps to recover board from any patient who had an estate at the time he was committed to the asylum, or from any patient who should thereafter acquire an estate which could be subjected to the payment of the debt. And, the statute further explains what property of a lunatic patient may be subjected to the payment of his board.

Neither the superintendent nor the commissioners have the right to exempt a lunatic patient from the payment of board if he has an estate which may be subjected to the payment of board; and not even the legislature can so exempt one by a special act. Humber v. Central Kentucky Asylum, 100 Ky. 112. The fact that the inquisition failed to show that the lunatic had property that was subject to the payment of his board can not exempt him or his property from that liability in case he then had property, or subsequently acquired it.

In Central Kentucky Asylum v. Penick, Committee, 102 Ky. 533, it was held that a petition drawn under section 257 of the Kentucky Statutes, which alleged, in the language of the statute, that a patient had estate which could be subjected to the payment of his board, and that the lunatic's committee had ample and sufficient means in his hand to pay the board claimed, presented a cause of action, although the proceedings were *in rem,* and not at law. And, although a lunatic should be committed to the asylum under a void inquest his estate is, nevertheless liable for board, upon a *quantum meruit.* Porter v. Eastern Kentucky Asylum, 28 Ky. L. R. 796, 90 S. W. 263.

The policy of the state as declared by its statutes, upon this subject is, that no insane person shall be supported at the public expense if he has any property from

which his board can be collected. That policy was recognized in Holburn v. Pfanmiller's Admr., 114 Ky. 835, where the court said:

"The state has provided these charitable institutions at its expense for the care of those unfortunates whose mental condition requires them to be forcibly restrained. The system provides that those who are, or whose parents are, able financially to support them, must pay to the asylum the same charge for their keeping as is allowed by the state for the maintenance of pauper lunatics kept there."

The petition as amended in the case at bar states that Lyttleton was adjudged to be a lunatic in 1912 and committed to the plaintiff asylum on April 24th, of that year; that he was supported and maintained in the asylum until January 1, 1916; that he is unmarried, without a family, is not a housekeeper, and has no one depending on him for support; that no part of the debt has been paid; and, that the committee has in his hands $915.40 belonging to Lyttleton. Under the above authorities, we are clearly of the opinion the petition stated a cause of action, and that the demurrer thereto should have been overruled.

2. Neither is there any merit in the second ground of the demurrer that the petition was bad because it failed to state that the account was just; that there was no discount against it; that it was not entitled to any credit; and, that there was no usury embraced therein. It is true that section 2154 of the Kentucky Statutes provides that claims against the estate of a person of unsound mind shall not be allowed or paid until verified and proven in the manner provided by section 3870 of the Kentucky Statutes for the verification and proof of claims against the estates of deceased persons. But the proper practice is to raise the question of the failure to make the statutory affidavit by pleading, or by rule to show cause why the petition should not be dismissed; not by demurrer. Thomas' Exr. v. Thomas, 15 B. M. 178; Rogers v. Mitchell, 1 Met. 24; Nutall's Admr. v. Brannin, 5 Bush 14; Holland v. Lowe, 101 Ky. 102; Tichenor v. Wood, 24 Ky. L. R. 111, 70 S. W. 837; Moore's Admr. v. Pierce, 160 Ky. 110.

Judgment reversed, with instructions to overrule the demurrer to the petition, and for further proceedings.