# Winkles *v.* Powell.

## *Sale for Partition.*

(Decided May 18, 1911. 55 South. 536.)

1. *Judgment; Res Adjudicata; When Available.*—Unless pleaded, a former adjudication is not available.

2. *Divorce; Special Legislation; Granting Divorce.*—A special act granting a divorce was unconstitutional under section 23, Article 4, Constitution 1871.

3. *Same; Grounds; Abandonment.*—The refusal of the wife to accompany the husband to the domicile selected by him is an abandonment, and if continued for the statutory period is grounds for divorce.

4. *Life Estate; Character of Possession; Life Tenant.*—The possession of the widow as a life tenant of lands belonging to her husband is not adverse to the heirs of the husband.

5. *Husband and Wife; Domicile; Husband's Right to Select.*—If the wife's health or safety is not imperiled thereby the husband has the right to select and designate the family domicile.

6. *Homestead; Right of Wife.*—The wife has no estate in the husband's homestead, he having the legal title. Her only right is that of joint occupancy with him, and the right to veto his alienation of it under the statute.

7. *Same; Abandonment; Right of Husband.*—Under Section 4190 Code 1907, a husband may be entitled without his wife's consent to abandon the homestead, but he cannot, by abandoning both the homestead and the family, deprive them of their right to hold the homestead so long as they use it as such.

8. *Same; Ratification by Wife.*—Where the husband conveyed the homestead by deed without the wife joining therein, or consenting thereto, a subsequent approval of the deed by the wife did not validate the deed.

9. *Partition; Apportionment of Costs; Discretion.*—The apportionment of the costs among the several heirs in a partition proceed-

ing rests in the sound discretion of the chancellor, and will not be disturbed on appeal.

(McClellan, J. dissenting.)

APPEAL from Marshall Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill for partition by Annie Winkles against James Powell and others. From a decree granting partition and allowing petitioner a one-sixth interest, she appeals. Affirmed.

E. O. McCORD, for appellant. The ejectment suit settled the interest of the parties in the land and became res adjudicata as to the matter. The vital question in this cause is, where was the homestead of Powell when he executed the deed to a one-half interest in the lands in controversy? Homestead is defined to be the home place—the place of the home.—*Lyon v. Harden,* 129 Ala. 645; *McGuire v. VanPelt,* 55 Ala. 35. Having abandoned the place and taken up his abode elsewhere, these lands ceased to be the homestead.—*Striplin & Co. v. Cooper & Son,* 80 Ala. 256; *Land v. Boykin,* 122 Ala. 627; *Blackman v. Moore H. H. Co.,* 106 Ala. 458; *Sides r. Schharff,* 93 Ala. 106; *Boyd v. Shulman,* 59 Ala. 566. The husband has the right to fix, choose and designate the domicile or place of abode.—*Talmage v. Talmage,* 66 Ala. 199; 58 Ala. 451. The court erred in its apportionment of the cost.

STREET & ISBELL, for appellee. The act divorcing Powell from his first wife and legalizing his second marriage was void as being clearly unconstitutional.—*Jones v. Jones,* 95 Ala. 443. The desertion of his family did not operate as an abandonment of the homestead by them.—15 A. & E. Ency. Law, 658; 21 Cyc. 597; *Palmer v. Sawyer,* 103 N. W. 1088; *Weatherington v. Smith,* 13

L. R. A. N. S. 430; *Bremseth v. Olsen,* 13 L. R. A. N. S. 170; *Frazier v. Lyas,* 35 Am. Rep. 466; *Lynn v. Sentel,* 75 Am. St. Rep. 110; *Moore v. Dunning,* 81 Am. Dec. 301; Code, Sec. 4190, 1907. The land was therefore a homestead at the time of the attempted conveyance.— Sec. 4161, Code 1907. Res adjudicata to be available must be pleaded.—*Hooper v. Strahm,* 71 Ala. 75; *Winter v. Merrick,* 69 Ala. 86. Where a title asserted depends upon an estoppel, it must be pleaded in equity. —*Hall v. Henderson,* 126 Ala. 490; *Jones v. Peebles,* 130 Ala. 269.

SOMERVILLE, J.—The original bill is for the sale of 80 acres of land for distribution among the tenants in common, and is filed by complainant against her brothers and sisters, or their representatives in blood. The bill alleges that complainant owns an undivided seven-twelfths interest in the land, and that respondents own the remaining undivided five-twelfths. The respondents filed their answer and cross-bill, denying that complainant owned more than a one-sixth interest in the land, and setting forth the following facts with respect to the title thereof. The land in question was owned by one Lewis R. Powell in 1885, and was then occupied as a homestead by himself and wife, Sarah A. Powell, and their daughter, Annie E. Winkles, the complainant. In that year—1885—said Powell charged his said wife with adultery, and abandoned her and their home, to which he never returned, and took up his abode elsewhere. In May, 1885, he filed a bill for divorce on the ground of adultery, and in November, 1885, a decree was rendered divorcing him from his said wife. In February, 1887, on appeal to the Supreme Court, this decree was reversed, and the bill of complaint dismissed. In the meantime, in January, 1886,

Powell had married one Fannie Windsor, and, after the adverse decree of the Supreme Court, he procured the passage in February, 1889, of a legislative bill divorcing him from his wife, Sarah, validating his marriage with Fannie Windsor, and legitimating the issue thereof. After this Powell and his new wife, the said Fannie, removed to Winston county, where he purchased 130 acres of land, which they resided on until his death in November, 1897, raising a family in the meanwhile. In May, 1891, said Powell and Fannie Windsor, as his alleged wife, executed a deed to certain parties conveying to them an undivided half interest in the lands described in the bill. In November, 1904, said grantees conveyed to Annie Winkles, the complainant, all their interest in said lands; and previously, in January, 1899, the said Sarah Powell executed a deed conveying said lands to complainant, after which, as before, the said Sarah and complainant continued to occupy the lands jointly until the former's death, which occurred in February, 1906. The lands in suit were never worth in excess of $2,000; and the parties to this suit are all of the heirs of said Lewis Powell, representing six original shares. The foregoing facts are emboddied in an agreed statement of facts upon which the cause was tried. In this agreed statement is a recital that the respondents sued the complainant in ejectment for these same lands in September, 1906, and in October, 1907, recovered a judgment against her for a five-twelfths undivided interest, of which they were placed in possession.

The chancellor, disregarding the conveyances under which complainant claims, apportioned the ownership of the land in accordance with the original heirship of the parties, allowing complainant a one-sixth interest only; and he taxed her with one-half the costs of suit.

His decree in both of these particulars is assigned as erroneous.

1.   The fact that in an ejectment suit these respondents recovered of complainant only a five-twelfths interest in these lands, even if every essential of an estoppel by judgment appeared (which is not the case), can avail the complainant nothing here, since she has nowhere pleaded it. This rule is inflexible.—*Clark v. Johnson,* 155 Ala. 648, 47 South. 82; *Jones v. Peebles,* 130 Ala. 269, 30 South. 564; *Hall v. Henderson,* 126 Ala. 490, 28 South. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53. Properly pleaded and proved, the result would, it seems, have been otherwise.—*Coleman v. Stewart,* 170 Ala. 255, 53 South. 1020.

2.   The legislative divorce granted to Lewis Powell, being violative of section 23 of article 4 of the Constitution of 1875, was an absolute nullity, and Sarah Powell continued to be his lawful wife as long as he lived, his attempted marriage with another woman notwithstanding.—*Jones v. Jones,* 95 Ala. 443, 11 South. 11, 18 L. R. A. 93. Nor would it make any difference if it were acquiesced in and treated as valid by the lawful wife.

3.   As surviving widow of Lewis Powell, Sarah Powell owned but a life estate in these lands, and her deed to complainant conveyed no more than that. There is nothing in the record to show that the widow ever claimed the lands adversely to her husband; and, if she had, her possession could not have become adverse since it was at all times rightful and lawful, and neither her husband nor his heirs could have disturbed it.

4.   It only remains to consider whether, under the conditions shown, Lewis Powell could make a valid deed to these lands without the voluntary signature and assent of his lawful wife, Sarah. Undoubtedly, the law authorizes the husband to choose and fix the domi-

cile of himself and wife and children; and, when he exercises this power, the wife's refusal to accompany him and share with him the home of his selection is tantamount to an abandonment of him by her, and, if continued for the statutory period, becomes a ground of divorce against her. Of course, this power has its limitations and cannot be so exercised as to imperil the health or safety of the wife.

The wife has no estate in the homestead when the legal title is in the husband, and the only rights she has with respect thereto are the common-law right of occupancy jointly with the husband, and the statutory right of veto against its alienation, so long as it remains the family homestead.—*Witherington v. Mason,* 86 Ala. 349, 5 South. 679, 11 Am. St. Rep. 41.

It results from these principles that the husband may without the wife's consent abandon the homestead, and by so doing deprive it of the privileges and free it from the restraints attached to it by law. It is clear, therefore, that had Powell simply abandoned his home in Marshall county, and acquired a home in Winston county, which he invited his wife to share, her refusal to do so, and her continued occupancy of the former home, would not have preserved the homestead character of such former home, and he could have alienated it without her signature or assent, subject, of course, to her inchoate right of dower. But the record shows that he permanently abandoned both his home and his family; and so far was he from desiring the further presence of his wife that in less than a year he took another woman and installed her in the new home which he acquired. In accordance with the spirit and purpose of our homestead laws, we are of the opinion that the husband could not thus abandon the homestead occupied by himself and his wife; and, while she continued to oc-

cupy it as her home, and was excluded from his pres-
ence and his home elsewhere, thereby empower himself
to convey it away without her lawfully expressed con-
sent. And the principle of this view has been approved
by the courts of many states.—21 Cyc. 597; 95 Am. St.
Rep. 936, note.

5. By section 2537, Code 1886, brought forward as
section 4190, Code 1907, it is provided that when, among
other things, the husband absconds or abandons his
family, the wife shall be entitled to interpose any and
all claims of homestead or other exemption which the
husband could have interposed, conditioned on her in-
tention to continue a resident of the state. While this
statute does not in terms forbid alienation of the home-
stead by the husband without the wife's consent dur-
ing the period of his abandonment, it does plainly show
a legislative intent to preserve the character and immu-
nities of the homestead in favor of the dependent mem-
bers of the family, in despite of its attempted abandon-
ment by the husband. Such solicitude would be barren
of the good results intended if the husband could nev-
ertheless declare the homestead abandoned, and by his
deed alone authorize any stranger to enter and expel
his helpless family. Its policy and effect are therefore
strongly confirmatory of our conclusion above an-
nounced.

It is strongly urged by counsel for appellant that in
denying the power of the husband to alienate in this
case we are not protecting the wife at all, but are in
fact actually thwarting her wishes with respect to the
disposition and beneficial enjoyment of this property,
which she wished to go to her daughter, the complain-
ant, as shown by the deed she made to her. But this is
wholly apart from the question, which is solely upon
the validity of her husband's deed to strangers. If that

deed was void when made—and we hold that it was—it could not be afterwards validated by the tacit or expressed approval of the wife not evidenced as the statute requires. Nor, indeed, would the result be different if the husband's grantees had reconveyed to the wife instead of to her daughter, the complainant.

6. The apportionment of costs, especially in a case like this, rests in the sound discretion of the chancellor, and will not be reviewed on appeal.—*Kitchell v. Jackson*, 71 Ala. 556.

There being no error in the record, the decree of the chancery court is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, MAYFIELD, and SAYRE, JJ., concur. MCCLELLAN, J., dissents.

SIMPSON, J., holds that section 4190 of the Code is decisive of the question.

MCCLELLAN, J. (dissenting).—By express provision of the Constitution, ownership and actual occupancy (with a single quasi exception, to be noted) are twin prerequisites—the one no more important than the other—to the establishment and retention of an homestead, with its attendant rights of exemption in this state.—Const. 1875, art. 10, §§ 2, 3; Const. 1901, §§ 205, 206; *McConnaughy v. Baxter*, 55 Ala. 379; *Turner v. Turner*, 107 Ala. 465, 18 South. 210, 54 Am. St. Rep. 110; *Murphy v. Hunt*, 75 Ala. 438; *Barber v. Williams*, 74 Ala. 331; *Boyle v. Shulman*, 59 Ala. 567, among others. The quasi exception mentioned is with respect to temporary absence from the homestead or the leasing of the same.—*Turner v. Turner, supra.* Its statutory creation is confirmatory of the existence of the prerequisite of actual occupation. In *Boyle v. Shulman, supra,* it was said, Brickell, C. J., writing: "Actual occupation

as a dwelling place as a home is the characteristic which distinguishes it (homestead) from other real estate. * * * A man can no more have two homes than he can have two domiciles at the same time." In *Woodstock Iron Co. v. Richardson,* 94 Ala. 629, 10 South. 144, following *Boyle v. Shulman,* it was said: "It is legally impossible to have two homesteads at the same time." In *Barber v. Williams,* it was said: "Occupancy as a home, as a dwelling place, is the fact which impresses upon land the character of a homestead, drawing it within the influence of constitutional and statutory provisions, exempting it from liability for the payment of debts, or from subjection to administration, or intercepting the descent to the heir." As is obvious from Const. §§ 205, 206, statute and decision, the wife has no legal power with respect to the selection or establishment of an homestead by the husband in his lands. The fixing of that status—that impression of the homestead characteristic—upon his lands is unrestrictedly and unqualifiedly reposed in the husband. He may abandon an homestead once established. Indeed, he during his life may, if he chooses, so order his habitation as to have no homestead whatever in this state. "Neither the Constitution nor the statute confers on the wife any right or estate in the homestead during his life, *but a mere power to prevent its alienation.*" (Italics supplied.)—*Witherington v. Mason,* 86 Ala. 345, 349, 5 South. 679, 681, 11 Am. St. Rep. 41.

The statute (Code, § 4190) referred to in the majority opinion only has reference to the claim of exemptions against the demands of creditors. It does not assume to confer on the wife or minor children the right to fix the homestead character on lands of the husband or father; for, under our system, only the owner may do that. Indeed, the statute clearly presupposes that

the exempt character of the property that may be claimed as exempt by the wife or minor children has been previously impressed upon it by the owner, the husband or father. This appears from the terms of the statute wherein it is provided that the wife or minor children shall, upon the contingencies enumerated with respect to the husband or father, "be entitled to interpose any and all claims of homestead or other exemption which the *husband or father could have interposed.*" (Italics supplied.)

If the statute should be read as conferring upon the wife or minor children the right to prevent the husband or father from abandoning an homestead once established, or, to qualify, correlatively, the owner's right to select his homestead, it would offend the Constitution by attempting to unwarrantably impose conditions on the benefit and exercise of a constitutional right.— Coolsey's Const. Lim. p. 99; *Marks v. Wilson,* 115 Ala. 561, 563, 22 South. 134. However, the statute makes no such attempt. It merely confers under the circumstances enumerated upon the wife or minor children the claim power, as against the creditors of the husband or father, the absent or disabled husband or father could have exercised were he present and not disabled. It makes no effort to affect the establishment of the homestead, nor to trench upon the rules with respect to its alienation. In the writer's opinion the statute is not in any way a factor in the matter presented for review.

As appears from the statement of facts in the majority opinion, Powell ceased, in 1885, to occupy the Marshall county place as an homestead, charged his wife with infidelity, and took up his abode elsewhere. This departure from its occupancy denuded that area in Marshall county of the characteristic of an homestead. He could not have claimed it as exempt against the

claims of a creditor. He bought 130 acres of land in Winston county, Ala., and resided on it until his death, there raising a family by one not his wife. If homestead he had, it was this place in Winston county. He could not have two homesteads at the same time. He could not, under Constitution, statute, and decision, have an homestead in an area which he did not in the accepted legal sense actually occupy. As against a judgment creditor's execution, surely he could not have claimed the Marshall county place as exempt, for he did not occupy it in any sense.

However outrageous and unjustifiable may have been Powell's abandonment and treatment of his wife Sarah and their daughter, that fact cannot in my opinion have any bearing or influence upon the inquiry, Was the Marshall county place the homestead of Powell when he undertook to convey it? If the deprivation of his right to select and establish another homestead, or to abandon one already established is a penalty for such wrongs, it is clear that the wife is given a far greater power with respect to the homestead than has been heretofore supposed to exist. In the Constitution she is given during the life of the husband only "a mere power to prevent its (homestead's) alienation."—*Witherington v. Mason, supra.* But if an homestead, once established, cannot be abandoned as Powell undertook to do here, then, as the writer views it, the power of the wife is greater than the Constitution's grant of the right of selection to the owner; its language being, "Every homestead * * * to be selected by the owner * * *" It seems to me that the result attained on this appeal is the pronouncement of the forfeiture of Powell's constitutional right to select his homestead upon the wholly unrelated ground of his dereliction in duty to his wife Sarah and their daugh-

ter. However reprehensible may have been his conduct in so doing, and however prone all good men are to frown upon wrong and to discountenance immorality, the writer cannot find therein any justification for the negation in any degree of Powell's unqualified constitutional right to select his homestead, which necessarily imports the right to abandon one already selected.

So, holding these views, I cannot concur.