(77 South. 406)

LEWIS v. LEWIS.    (6 Div. 147.)

(Supreme Court of Alabama.    May 31, 1917. On Rehearing Dec. 20, 1917.)

1. HOMESTEAD ⬦⟲154—ABANDONMENT.
    Abandonment being a question mainly of intent, involuntary or compulsory abandonment of, or absence from, the homestead will not be held to constitute an abandonment or forfeiture or waiver of homestead rights.

On Rehearing.

2. HOMESTEAD ⬦⟲154—ABANDONMENT—COMMITMENT TO INSANE ASYLUM.
    Under Code 1907, § 4190, as to homestead rights of wife of absconding husband, and Const. 1901, § 205, Code, § 4161, as to deed of homestead, where a husband deserted his wife who, becoming insane, was committed to an asylum, her absence from the homestead because of the commitment was not abandonment thereof so that his deed of the homestead, not signed and separately acknowledged by her, passed no title, but the wife was entitled to possession of the property.

3. TRUSTS ⬦⟲295—PROPERTY OF INSANE PERSON—ACCOUNTING.
    Where brother held property for his insane sister, deserted by her husband, and after the brother's death his widow, as his executrix and sole devisee, continued to hold it, the widow would be required to account to the insane woman's guardian for income and profits received by the brother during his lifetime and by the widow after his death.

McClellan and Sayre, JJ., dissenting.

Appeal from Chancery Court, Jefferson County; A. H. Benners, Judge.

Suit by Fannie L. Lewis against Mrs. Mollie Barry Lewis. From decree for complainant, respondent appeals. Affirmed.

---

Allen, Fisk & Townsend, of Birmingham, for appellant. Sterling A. Wood and Henry Upson Sims, both of Birmingham, for appellee.

MAYFIELD, J. On consideration of the application for rehearing, the majority of the court are of the opinion that the application should be granted, and the judgment of reversal set aside and one of affirmance entered.

The following may be stated as some of the reasons which impel us to the conclusion now reached:

It is without dispute that the property in question was the homestead of W. F. Sparling; that he resided upon it, with his wife, Janet A. Lewis Sparling, the ward of appellee, for some time, and until about the year 1894 or 1895, when he abandoned his wife, his homestead, and the state, leaving his wife in the possession of the homestead; that there she remained until about the year 1900, when she became insane, and was so adjudicated, and committed to the state asylum, where ever since (or at least until the filing of this bill), she has remained in confinement as an insane person. Ever since the abandonment of his wife, the husband has remained away from her and from the state, his locus in quo being unknown to his wife or his friends in Alabama until about the time of the filing of this bill or shortly thereafter. After the ascertainment of his whereabouts, and pending this suit, he conveyed or attempted to convey the land in question to appellant. He was afterwards made a party to the suit.

The bill was filed by appellee, as guardian of the insane wife, against appellant individually and as the executrix of her deceased husband, R. S. Lewis, who was a brother of the insane ward, and appellee, the guardian. The bill sought to have a resulting trust declared in the lands, in favor of the ward and against appellant, and enforced, to have an accounting against appellant individually and as executrix, and to have her convey the property to the ward or to appellee guardian. The chancellor granted the relief prayed, and respondent appeals.

The allegations and the facts to show the trust were that after the ward's husband abandoned her, R. S. Lewis lived with his sister in her home, or near by, and, as her agent, took charge of the home to assess it for taxes, etc.; that he did assess it, and in his sister's name, but he allowed it to be sold, and at the tax sale he purchased the property, taking the title in his own name instead of in the name of his sister. Allowing it to be sold for taxes was done, as the brother professed, to defeat any claims through the absconding husband, who was then thought to be dead. He, the brother,

201 ALA.—8

even after the tax deed was executed to him and after his sister was adjudged insane, in talking to his other sister, the guardian, and appellee here, spoke of the land as his sister's. When R. S. Lewis died he devised all his lands to his wife, the appellant; and upon the will of her deceased husband the appellant based her sole claim to this land when the bill was filed. Pending suit, however, and after the absconding husband of the insane ward was located, appellant procured his deed to her of the land in question, and thereafter she attempted to set up that deed as a defense to this suit.

On the original hearing, we held that this deed passed a good title to appellant, and that this defense was made out. In this holding we were in error. This deed, under the undisputed facts in this case as we now hold, passed no title, either legal or equitable, because it was not executed in the manner required by our Constitution and statutes as to the alienation of the homestead of the husband; and there is no pretense that the deed of the husband was so executed. Const. § 205; Code, § 4161. The theory upon which, on the former hearing, we held the deed to be valid is well stated by Justice McClellan in the opinion on that hearing, where the authorities are cited in support of the holding. This theory, in short, was that the land, upon being conveyed by the absconding husband, ceased to be impressed with any homestead rights on the part of either the husband or the wife—on the part of the husband, because he had abandoned the homestead and absconded, with no animus revertendi; on the part of the wife, because she had left it and remained away continuously for a term of years, being all the while confined as a non compos mentis in an insane asylum. The basis error in the former holding was, in applying the law of abandonment of homestead, to facts which did not constitute an abandonment, so far as the wife was concerned, nor subject the homestead to alienation by the husband without his complying with the Constitution and with the statutes governing such alienation. We are now dealing with the wife's homestead rights, and not those of the husband. In the very recent case of Winkles v. Powell, 173 Ala. 51, 52, 55 South. 536, 538, it is said:

"It results from these principles that the husband may, without the wife's consent, abandon the homestead, and by so doing deprive it of the privileges and free it from the restraints attached to it by law. It is clear, therefore, that had Powell simply abandoned his home in Marshall county, and acquired a home in Winston county, which he invited his wife to share, her refusal to do so, and her continued occupancy of the former home, would not have preserved the homestead character of such former home, and he could have alienated it without her signature or assent, subject, of course, to her inchoate right of dower. But the record shows that he permanently abandoned both his home and his family; and so far was he from desiring the fur-

ther presence of his wife that in less than a year he took another woman and installed her in the new home which he acquired. In accordance with the spirit and purpose of our homestead laws, we are of the opinion that the husband could not thus abandon the homestead occupied by himself and his wife, and, while she continued to occupy it as her home, and was excluded from his presence and his home elsewhere, thereby empower himself to convey it away without her lawfully expressed consent. And the principle of this view has been approved by the courts of many states. 21 Cyc. 597; [Jerdee v. Furbush, 115 Wis. 277, 91 N. W. 661] 95 Am. St. Rep. 936, note. By section 2537, Code of 1886, brought forward as section 4190, Code 1907, it is provided that when, among other things, the husband absconds or abandons his family, the wife shall be entitled to interpose any and all claims of homestead or other exemption which the husband could have interposed, conditioned on her intention to continue a resident of the state."

The difference between the facts of the Winkles-Powell Case and those of the case in hand is that in the former the wife remained on the homestead, while in this instance she left it. But she did not leave it voluntarily; she was adjudged insane, and removed by force, though in accordance with law; hence this case presents the question: Does such a leaving constitute an abandonment by the wife? We hold that it does not. Actual occupancy, in such cases, is not required to preserve the homestead rights of the wife whose husband has abandoned her and absconded, leaving her without aid or assistance from him in her sad and unfortunate condition. It would be unconscionable to hold that he could, by such inhuman conduct, deprive her of the only source of support which he had left her; and so we find the justice of the case in this instance to be the law of the case. The principle of law and general rule in such cases seems to be that occupancy of the homestead is necessary to the survival of the homestead rights; that the protection of the property as a homestead continues only so long as the occupancy continues. This general rule, like most rules of its kind, however, has its exceptions, limitations, and qualifications; and the case in hand falls within one of these exceptions. Abandonment being a question mainly of intent, no uniform rule can be enunciated as to what facts will constitute the act. This court has said that abandonment includes both the intention and the external acts by which the intent is carried out. Tennessee, etc., Co. v. Taylor, 102 Ala. 224, 14 South. 379. In the opinion in that case the rule was quoted and stated, from the authorities, as follows:

" 'Abandonment includes both the intention to abandon and the external act by which the intention was carried into effect,' and 'as intent is the essence of abandonment, the facts of each particular case are for the jury.' 1 Amer. & Eng. Encyc. of Law, p. 1, notes and authorities; Wyman v. Hurlburt, 12 Ohio, 81; s. c., 40 Am. Dec. 461, note 464."

[1] Hence involuntary or compulsory abandonment of, or absence from, the home-stead will not be held to constitute an abandonment or a forfeiture or waiver of the homestead rights. Of such character would be the abandonment charged in the case at bar, and similar cases, where the occupant was adjudicated insane, and removed to and detained in an asylum. Burkhardt v. Walker & Son, 132 Mich. 93, 92 N. W. 778, 102 Am. St. Rep. 392;¹ Sheehy v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 368, 111 Am. St. Rep. 184, 5 Ann. Cas. 924; Huffman v. Smyth, 47 Or. 573, 114 Am. St. Rep. 938; 8 Ann. Cas. 681, and notes thereto. From these notes we quote the following, as stating the rule announced by the authorities cited:

"If a wife is compelled through fear of violence at the hands of her husband to live at a place other than upon the homestead, or if her absence is caused by any unlawful act committed by him, her enforced absence will not be held to be an abandonment or forfeiture of her rights in the homestead, where it appears that she never had any intention to relinquish the same. Vanzant v. Vanzant, 23 Ill. 536; Rogers v. Day, 115 Mich. 664, 74 N. W. 190 [69 Am. St. Rep. 593]; Atkinson v. Atkinson, 37 N. H. 434; Wood v. Lord, 51 N. H. 448." Huffman v. Smyth, 47 Or. 573, 84 Pac. 80, 114 Am. St. Rep. 938, 8 Ann. Cas. 681, note.

"In Blumer v. Allbright, 64 Neb. 249, 89 N. W. 809, the court held that a wife was not deprived of her homestead rights because her husband left the homestead without an intention to return unless she participated in his intention. So, also, it is held that a wife loses none of her homestead rights by being driven from the homestead through the cruelty of her husband. Rogers v. Day, 115 Mich. 664, 69 Am. St. Rep. 593, 74 N. W. 190. And the detention of a husband or wife in a lunatic asylum is held not such an absence as indicates an intention to abandon the homestead. Way v. Scott, 118 Iowa, 197, 91 N. W. 1034; Nat., etc., Ass'n v. Maloney, 22 Ky. Law Rep. 1094, 60 S. W. 12; Holburn v. Pfanmiller's Adm'r [114 Ky. 831] 24 Ky. Law Rep. 1613, 71 S. W. 940; Flynn v. Hancock, 35 Tex. Civ. 395, 80 S. W. 245." Burkhardt v. Walker & Son, 132 Mich. 93, 92 N. W. 778, 102 Am. St. Rep. 392, note.

There is another general rule, to the effect that the abandonment of the homestead by the husband as the head of the family, and the acquisition of another residence or homestead, terminates the right of the wife, as well as that of the husband, therein as to a homestead. An exception to this rule, however, is that if the abandonment be not in good faith, and to acquire a residence, if not a homestead, for the wife and family, but is in fact a desertion of them by the husband and father, then it does not impair or forfeit the rights of the wife. He does not, in such case, act for them, but against them. He is not allowed thus to defeat the object and purpose of the homestead laws, such purpose and object being the protection of the family. The homestead laws, as a system, including even those exempting the homestead to the husband, are not for the sole benefit of the husband, but are for the benefit of the wife and children as well, even during the husband's life. Witherington v. Mason, 86 Ala. 345, 5 South. 679, 11 Am. St. Rep.

41; Kennedy v. Tuscaloosa Bank, 107 Ala. 170, 18 South. 396, 36 L. R. A. 308.

This court has uniformly held that the homestead laws are to be liberally construed, to the end of advancing their beneficial objects, by giving effect to the manifest purpose of the Constitution makers and of the Legislature in conferring the rights. Thompson v. Thompson, 91 Ala. 591, 8 South. 419, 11 L. R. A. 443; Talladega Bank v. Browne, 128 Ala. 557, 29 South. 552. The rule is well stated in 13 Ruling Case Law, 548, where it is said:

"The purpose and object of the homestead provision being the protection and maintenance of the wife and children against the neglect and improvidence of the husband and father, the statutory enactments in aid of such provision and supplemental thereto are to be given a liberal construction, so that the purposes intended by the laws shall the better be advanced and secured. And so the courts employ the most liberal and humane rules of interpretation to insure the unfortunate debtor, and his equally unfortunate but more helpless family, the shelter and influence of home."

This court has spoken as follows on the subject:

"Their obvious purpose is to secure to each family a home and means of livelihood, irrespective of financial misfortune, and beyond the reach of creditors; security of the state from the burden of pauperism, and of the individual citizen from destitution. Such statutes are entitled to a liberal construction, a construction in conformity with the benevolent spirit which moved their enactment." Hines v. Duncan, 79 Ala. 114, 115 (58 Am. Rep. 580).

This court is thoroughly committed to the doctrine that a deed from an absconding husband under circumstances such as marked that in the instant case, is absolutely void and of no effect. In the case of Thompson v. New England Mortgage, 110 Ala. 400, 405, 18 South. 315, 316, 55 Am. St. Rep. 30, 31, it is said:

"The purpose of the statutes in securing an exempt homestead to every resident of the state, and in requiring the wife's voluntary signature and assent to any alienation thereof when belonging to the husband, is to protect the wife, and through her the family, in the enjoyment of a dwelling place. Turner v. Bernheimer, 95 Ala. 241 [10 South. 750] 36 Am. Rep. 207. This court, as well as those in other states having a similar system, has adopted a strict rule on this subject, in accordance with which it is generally held that to convey the homestead there must be a strict compliance with the statutory mode of alienation. In a recent case, where we collected our previous decisions, speaking of a deed which was without the acknowledgment of the wife, we said: 'By the repeated decisions of this court, as well as by the terms of the statute itself, such a conveyance is void. It is said of such a deed that it is a nullity to all intents and purposes, and confers no rights, present or prospective, is totally insufficient as a muniment of title to support an action of ejectment, and is incapable of passing any estate or interest whatever in the homestead.' Parks v. Barnett, 104 Ala. 438 [16 South. 136]; Alt v. Banholzer, 39 Minn. 511 [40 N. W. 830] 12 Am. St. Rep. 681, and note. The insanity of the wife does not dissolve the bond of marriage, nor withdraw her or her family from the beneficial purpose of the homestead laws. The statute is plain, unambiguous, and admits of no exceptions, which would destroy its obvious design."

It therefore follows that appellant acquired no title by virtue of the deed secured after this suit was brought; and, as we held on the original hearing that her husband acquired no title by the tax deed, it follows that she acquired no title by virtue of his will, and therefore showed no title to the land in question.

And as under the undisputed facts appellant had received the income and profits from the land since the death of her husband and he had received such rents and profits for a period during his lifetime, under the circumstances of the disability of the insane ward, each of them should have accounted to the guardian of the non compos mentis, under whom the rents and profits were received.

It follows that the decree of the chancellor was in all things correct, and that it must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur. McCLELLAN and SAYRE, JJ., dissent.

McCLELLAN, J. (dissenting). In Witherington v. Mason, 86 Ala. 349, 5 South. 681 (11 Am. St. Rep. 41) it was said:

"The homestead right is of constitutional or statutory creation, and its nature, character, and extent depend on the law creating and defining it. The exemption is a personal right conferred on the debtor, the benefit and enjoyment of which inures to his family, through and by the exemption in his favor. *The right and estate of homestead are in the husband, in whom the title to the property resides. Neither the Constitution nor the statute confers on the wife any right or estate in the homestead during his life, but a mere power to prevent its alienation.* She may occupy and enjoy it with her husband by his permission, but he has the right to abandon it at pleasure." (Italics supplied.)

This pronouncement was recently expressly recognized in Winkles v. Powell, 173 Ala. 51, 55 South. 536. This doctrine of Witherington v. Mason is a rule of property in this state, and should be so respected. According to it, the wife's relation to the homestead area is dependent, conditionally secondary, derivative merely. If a husband has not a homestead in this state, the wife has not, cannot claim the privilege thereof, nor possess the "mere power to prevent its alienation."

By amendment of the complainant's bill W. F. Sparling was made a party complainant. In this amendment it is averred (transcript, p. 9) "that the complainant W. F. Sparling is a resident of Spartanburg county, S. C. * * *" In the same amendment (transcript, pp. 10, 11) it is averred that W. F. Sparling, and not Mrs. Janet A. Sparling, was the owner in fee of the property in question, and that Janet A. Sparling was in "possession and enjoyment under the seisin of her husband, W. F. Sparling, as her home" (transcript, pp. 54, 55). In W. F.

Sparling's verified answer to interrogatories propounded by the respondent (transcript, p. 19) he gave Spartanburg, S. C., as his place of residence; and, in response to the second interrogatory (transcript, p. 19), which reads:

"State how long you have lived in Spartanburg, S. C., and state what other places you have lived in since leaving Birmingham, giving the length of your residence at each * * * place"

—he said:

"Eight or 10 years; Kingston, N. Y., a few months; Columbia, S. C., about one year; Camden, S. C., about four months; Lancaster, S. C., about one year; Douglass, Ga., a few months; Douglasville, Ga., a few months; Boliver, Tenn., about six months; Anniston, a few months; Passaic, N. J., and Winsted, Conn., South Point, Conn., and perhaps other places, for a short time each."

In the deposition of W. F. Sparling, taken by the complainants, he testified (transcript, p. 62) that he resided at Spartanburg, S. C.; and in answer to interrogatory 5 (transcript, p. 63) he testified that he had not resided in Birmingham for some 20 years. The whole deposition of Sparling discloses the recognition of the fact by the complainants that W. F. Sparling had not resided in Alabama for many years before the quitclaim deed to Mrs. Lewis was executed by him, for a consideration, on April 18, 1910; that he was not a resident of Alabama for some years before, at the time of and since Mrs. Janet A. Sparling was adjudged insane and committed to the State Hospital for the Insane, where she has remained incurably insane. The majority of the court have held, in granting the rehearing and affirming the decree below, that the premises described in the quitclaim deed were impressed, continued impressed with a *homestead character*, and that the quitclaim was void because it was not, as Code, § 4161, requires, jointly executed by the wife, Janet A. Sparling. The statute (section 4161) follows section 205 of the Constitution, which prescribes a limitation upon the right to convey or incumber the *homestead*. That section (205), so far as presently important, reads:

"Every homestead, not exceeding eighty acres, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any city, town or village, or in lieu thereof, at the option of the owner, any lot in a city, town, or village, with the dwelling and appurtenances thereon owned and occupied by any resident of this state, and not exceeding the value of two thousand dollars, shall be exempt from sale on execution or any other process from a court. * * * Such exemption, however, shall not extend to any mortgage lawfully obtained, *but such mortgage, or other alienation of said homestead by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same.*" (Italics supplied).

In Turner v. Turner, 107 Ala. 465, 468, 469, 18 South. 210, 54 Am. St. Rep. 110, it was said:

"Homestead ex vi termini means the family seat or mansion, and the change of verbiage in our statute by the codifiers, in compiling the Code of 1886, whereby they omitted from section 2507 (now section 4160, Code of 1907) the phrase, 'owned and occupied by any resident of this state' was not intended to affect the well-settled rule recognizing actual occupancy, except in the single case stated (now and then as provided in Code, § 4192, and not important to the question under consideration), as an essential condition of a valid homestead exemption." Land v. Boykin, 122 Ala. 627, 629, 25 South. 172; Garrett v. Jones, 95 Ala. 96, 101, 10 South. 702.

In the last-cited decision it was said, by way of approving quotation:

"A man's homestead must be his place of residence; the place where he usually sleeps and eats; where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy."

Actual occupancy, coincident with ownership, is an essential prerequisite to the establishment and retention of a homestead in this state; with the single exception of temporary absence contemplated in Code, § 4192. Boyle v. Shulman, 59 Ala. 567; Woodstock Iron Co. v. Richardson, 94 Ala. 629, 10 South. 144, where it was said:

"It is legally impossible to have two homesteads at the same time." Barber v. Williams, 74 Ala. 331; Constitution, §§ 205, 206.

As the Constitution, statutes, and decisions all pronounce, it is the *owner alone* who can give, who has the capacity to give, a lot or tract of land the character of a *homestead*.

In this instance the owner, W. F. Sparling, is averred in the amended bill to be a nonresident of Alabama. The undisputed evidence shows that he was, when this quitclaim deed was executed, *not* residing in Alabama, and had not resided in Alabama for over 10 years. To affirm, in such circumstances, that W. F. Sparling had from the year 1900 to and including 1910, or subsequently, a homestead in Alabama is but to assert a result that immediately violates the Constitution and the statutes which plainly deny the right to a *homestead* to one who does not reside in Alabama. It is only by pronouncing, in effect, that one who actually resides in South Carolina is still a resident of Alabama that our Constitution and statutes can be accorded the respect their prescriptions and mandates require. The opinion in Winkles v. Powell, 173 Ala. 46, 50, 51, 55 South. 536, is not authority and does not afford analogy for the view that the lot in question was the homestead of W. F. Sparling when he executed the quitclaim deed to appellant. There the question presented and decided was whether L. R. Powell denuded the Marshall county, Ala., dwelling of its homestead character by moving away from the family abode, and whether he established a homestead in Winston county, Ala. Powell, the owner of both places, was and continued to be a resident of Alabama. If Powell had removed to and resided in another state, after he removed from his Marshall county, Ala., abode, and this court had held that, though Powell resided in another state, his original homestead in Marshall county, Ala., continued to be Powell's

homestead notwithstanding he did not reside in Alabama, the case could be referred to as an expression favorable to the decision in the cause at bar. But even in Winkles v. Powell, which in other respects departed from long-established doctrine in this state, it was expressly recognized that the husband, the owner, was authorized under our laws "to choose and fix the domicile of himself and wife and children," subject to the limitation that he should not so exercise this power "as to imperil the health or safety of the wife," a condition that Powell's removal from his abode in Marshall county did not impose upon his first wife. But it was nowhere intimated in that opinion that a nonresident of Alabama could have a *homestead* in Alabama, of which institution this court said in Barber v. Williams, 74 Ala. 331, 333, 334, Brickell, C. J., writing:

"Occupancy as a home, as a dwelling place, is the fact which impresses upon land the character of a homestead, drawing it within the influence of constitutional or statutory provisions, exempting it from liability for the payment of debts, or from subjection to administration, or intercepting the descent to the heir"

—and, it may be added, in accordance with abundant authority afforded by Constitution, statutes, and decisions: Clothing the wife with the "mere power to prevent its [homestead's] alienation" by refusing to join in its conveyance or incumbrance. The body of our law on this subject has been built up and repeatedly reaffirmed by Constitution makers, legislators, and judges of highly esteemed wisdom, legal learning and sensitive regard for every moral element of the social order; and this should at least insure caution and conservatism before overturning the results of their mature judgments.

In view of the conclusion reached in Winkles v. Powell, supra, predicated of the fact that the husband left the original abode because of the infidelity of the wife, and himself took another as wife under the mistaken notion that he had been divorced from the first wife, it is interesting to contrast therewith the expressions of this court in Nolen v. Doss, 133 Ala. 259, 31 South. 969, Coker v. Coker, 160 Ala. 269, 49 South. 684, 135 Am. St. Rep. 99, and ·Chamboredon v. Fayet, 176 Ala. 211, 216, 217, 57 South. 845, where, in the first cited case the infidelity of the wife was not permitted to defeat her right, growing out of the established, undissolved relation, to the exemption provided by law. It would seem to be at least somewhat anomalous to favor one rule for the one that is denied to the other. The Constitution and statutes should not be subjected to judicial amendment in the one case any more than in the other. It is said, however, particularly in Winkles v. Powell, 173 Ala. 51, 52, 55 South. 536, as quoted in the opinion of my Brother Mayfield, ante, that Code, § 4190, is established to influence in determining the validity of W. F. Sparling's quitclaim deed to the appellant. That section (4190) reads:

"If a husband or father, entitled to a homestead or other exemption, absconds or abandons his family, or leaves the state, or is insane, or is confined under a charge or conviction for felony or misdemeanor, or is under any other disability or inability, the wife, or if there is no wife, the minor child or children, residents of this state, with the intention so to continue, shall be entitled to interpose any and all claims of homestead or other exemption which the husband or father could have interposed; but the right to such exemptions shall continue only so long as the wife and minor child or children, or either, shall remain bona fide residents of this state. In the event of the death of the husband or father pending any contest of a claim of homestead, or other exemption, such contest may be revived in the name of the widow, if there be one, or if there be none, in the name of the minor child or children, if there be such; but if neither widow nor minor child is left surviving, the claim of exemption shall abate, and the property ordered sold for the satisfaction of the process. No judgment of condemnation or sale shall be made under this section till the wife, or if there is no wife, the minor child, shall have had 20 days' written notice of the levy of the execution, to be served by the sheriff."

It will be observed that this section (4190) has no reference whatsoever to the alienation of the homestead, a subject to which section 205 of the Constitution and section 4161 of the Code have particular reference. The idea underlying the provisions of Code 1907, § 4190, was stated in section 2837 of the Code of 1876, embodying section 20 of the act approved February 9, 1877 (Gen. Acts 1876–77, pp. 32, 40), which was entitled "An act to regulate property exempted from sale for the payment of debts and from administration, and to provide for the ascertainment and protection of such exempted property." True to the title quoted, which had no reference to the *alienation* of the area that had been given, *by the owner* (not the wife), the character of a homestead, section 20 of the act cited (Code 1876, § 2837) provided that if the *defendant in the execution* was "physically or mentally unable to make claim or be absent from the county at the time of the levy and does not return two days previous to the sale, then some other person having knowledge of the ꞌfacts" might make the claim for him. By the act approved March 1, 1881 (Gen. Acts 1880–81, p. 121), it was provided:

"That where any married man, who is a resident of this state, shall abscond or leave the state and abandon his family, leaving in the state a wife, or wife and a minor child or minor children, the wife so left shall have the right to claim, *in the name of her husband*, all exemptions which he would be entitled to claim had he not absconded or left the state, and if there be a minor child or minor children, and no wife, the guardian or custodian of such minor child or minor children shall have the right to claim such exemptions for such minor child or children, in *the name of the father of such minor child* or minor children; the claims in such cases to be conducted in the same manner as exemptions are now claimed under the Code.

"Sec. 2. * * * That the exemptions secured by the first section of this act shall continue only so long as the person or persons for whose benefit the exemption is claimed shall remain bona fide a resident of this state, with the in-

tention to so continue, and the persons claiming such exemptions shall in every case make affidavit before some officer authorized to administer oaths, that the person for whose benefit such exemption is claimed is a bona fide resident of this state, and intends to so remain."

This act of 1881 became section 2537 of the Code of 1886, and section 2063 of the Code of 1896. It is manifest from the terms employed in the act of 1881 that the purpose was to invest the wife and minor children, or either, with the power to claim, to assert all the exemptions the absent husband or father would have been entitled to claim, against process to enforce a demand against the absent exemptioner. The same notion pervaded this law when it was made section 2537 of the Code of 1886; and the idea was emphatically expressed by the provision for the sale of the property "for the satisfaction of the process." The identical purpose was entertained in the codification of 1896, section 2063. The like law, when carried forward into section 4190 of the Code of 1907, had added to it by the Code committee of the Legislature these terms:

"No judgment of condemnation or sale shall be made under this section till the wife, or if there is no wife, the minor child, shall have had twenty days' written notice *of the levy of the execution,* to be served by the sheriff." (Italics supplied.)

The last promulgation of the substance of the act of 1881, through section 4190 of the Code of 1907, admits of no sort of doubt that its purpose and effect, when applicable, was to invest the wife or minor children of the *absent* husband or father with the means to assert the exemptions from appropriation by *process* running against the absent husband or father, and that it was in no degree contemplated by the lawmakers that the provisions of this section (4190) should or could have any possible effect upon the *alienation* (Const. § 205) of the area that the husband or father, before he left the state, had, *as owner,* impressed with the character of a *homestead.*

In addition to the demonstration the above-recited history of section 4190 and its plain terms make of the utter mistake to suppose that the provisions of section 4190 apply otherwise than to claims of homestead exemptions from condemnation under process, reference may be made to Garland v. Bostick, 118 Ala. 209, 213, 214, 23 South. 698, and Sewell v. Sewell, 156 Ala. 616, 619, 47 South. 204, where it was held that Code, § 4192, related "exclusively to claim of homestead against levy and sale under process"; this statute (4192) having originated in the same act (Act approved February 9, 1877, Gen. Acts 1876–77, p. 43), in which what is now Code, section 4190, was first written. The progenitors of Code, §§ 4190, 4192, were sections 20 and 26, respectively, of the same original enactment of 1877, under a title, quoted above in this opinion, that restricted its purview and effect to *exemptions from sale under process.*

If section 4192 was and is exclusively applicable to exemptions from sales under process, as was expressly held in Garland v. Bostick and Sewell v. Sewell, supra, then section 4190, for the same reason, coming from the identical act as the progenitor of section 4192, should be likewise held to relate *exclusively* to homestead exemptions from sale under process; and so to forbid its application to restrain *alienation* by a husband who has been for many years a nonresident of Alabama.

The Constitution (section 205) has itself expressly undertaken to prescribe the limitation, with respect to the joinder of the wife in the conveyance or incumbrance of the homestead; and this limitation, so far as *alienation* is concerned, is predicated of the *homestead* to which that section refers (Turner v. Turner, 107 Ala. 465, 18 South. 210, 54 Am. St. Rep. 110; Barber v. Williams, 74 Ala. 331, 333, 334, among others); and this limitation of constitutional source cannot be altered by the Legislature, since the established rule is that where the Constitution prescribes, its method is a "limitation upon the powers to be exercised." Cooley, Const. Lim. (7th Ed.) p. 114; Perry County v. Railroad Co., 58 Ala. 556; Coleman v. Town of Eutaw, 157 Ala. 327, 334–336, 47 South. 703. According to the plainest terms of section 205 the limitation on *alienation* depends upon whether the area is a *homestead* within the purview of section 205 of the Constitution; and, if the area is not a *homestead* within the contemplation of section 205, the limitation has no application. It is the Constitution, the paramount law—not the Legislature —that has prescribed the limitation upon *alienation* and defined its basis, viz. the *homestead;* and in defining this basis, viz. the *homestead,* the Constitution has, by its terms and according to repeated well-considered decisions long since delivered, confined the exemption therein described to residents of Alabama. Obviously, it is no sound answer to this to say that the Legislature may, in its discretion, provide other or greater exemptions than those defined in the Constitution, since the question under consideration is one involving *alienation* of the *homestead,* not of claiming exemptions against a demand, against process directed to the appropriation of the absent exemptioner's property. Naturally, there is among our statutes no legislative effort to change the prescription of the Constitution, § 205, for the alienation of the homestead. An effort to make a change of the limitation, to extend or contract it, would but lead to invalidity.

My judgment is that the previous order of reversal of the decree and the dismissal of the bill should not be annulled; and hence that the rehearing should have been denied, since, if the premises described in W. F. Sparling's quitclaim deed to appellant was not a

homestead, and, hence, the joinder of the wife in its alienation was unnecessary, the conveyance was valid without her signature in virtue of Code, § 4495.

## On Rehearing.

ANDERSON, C. J. While I concurred in the opinion of the court in the affirmance of this case, I do not think that the decree of the chancery court should be affirmed in its entirety; that is, in so far as it directs a reconveyance of the property from the respondent to the complainant or her ward, else the opinion to avoid a misunderstanding in the future, should indicate that we do not hold that Mrs. Sparling has an absolute fee-simple title to the house and lot in question.

[2] I agree that Mrs. Sparling, upon the abandonment of herself and home by her husband, became entitled, under section 4190 of the Code of 1907 and Winkles v. Powell, 173 Ala. 51, 55 South. 536, to the same so long as she remained a bona fide citizen of the state. I also agree that removing her from same to the insane hospital was not an abandonment by her of the homestead right that she had under said section 4190, but I do not think that she became the absolute owner of the property. Should she survive her husband, it may be that she will acquire the fee under other provisions of the statute, but a decision of this question is not at this time necessary, as it is sufficient to hold that she was entitled to the use and enjoyment of same upon the abandonment by the husband, and that the respondent acquired no title, either under the deed from Sparling after the suit was brought, or under the void tax sale. The deed from Sparling was void for the reason that it was the homestead, and not signed and separately acknowledged by the wife.

[3] The bill in this case was primarily for a settlement and accounting for the rent and income from the land which was collected by the respondent and her husband, who took charge of the property for and in behalf of his insane sister, and I fully agree that the same should be accounted for less taxes and other proper expenses incurred, and that the decree in this respect should be affirmed. I also agree that the tax purchase was made by him for the benefit of his sister, and that if he acquired a title under said tax sale, it should inure to the benefit of his said sister, but this question is settled by the general concession that the tax sale was void. The court did not agree, however, with the contention that the deed acquired from Sparling after the suit was brought should inure to the benefit of Mrs. Sparling upon the idea that Mrs. Lewis was the agent and trustee for the said Mrs. Sparling. That relationship had terminated before this suit was brought. Nor does the court agree that the deed was procured through fraud practiced upon the said J. A. Sparling as contended for in the amended bill; but the court does hold that the said deed was void as contended for by the complainants, though for a different reason than the one assigned.

The complainant's ward was entitled to an accounting and settlement and to the possession of the property, and the only way that her relief could be defeated was to show that the respondent's husband owned the property, and was not therefore the agent of his insane sister, and which was not done. On the other hand, the proof shows that Lewis acted for his sister, recognized that it was her property, and in fact said that he let it be sold for taxes in order to improve her claim or title against that of her husband, and it would be inequitable and unjust to permit him to enjoy the fruits and benefits of his agency simply because his sister was not mentally able to bring him to an accounting.

MAYFIELD, SOMERVILLE, GARDNER, and THOMAS, JJ., concur in this explanation or qualification.